## QUIN *v.* BRITTAIN AND JONES.

A judgment creditor filing a bill to redeem leasehold property mortgaged by his debtor, must first take out execution.

It is not essential in a bill to redeem to offer to pay the amount. There is no decree for payment, but the bill is dismissed upon default of payment, and the decree becomes equivalent to a foreclosure.

No improvements put upon mortgaged premises by a mortgagee without consent will be allowed against the mortgagor. Expenditures for necessary repairs are allowable. Heads of a decree upon a redemption bill.

THE bill was filed by a judgment creditor of the defendant Brittain, who had issued an execution, and had it re-

1840.

Quin
*v.*
Brittain and
Jones.

Feb. 14. 15. 19.

turned unsatisfied, combining the usual allegations with certain charges respecting transfers of personal property by Brittain to the defendant Jones, and seeking to have them declared void, or to be declared securities only, and to have been satisfied.

*Mr. McKeon,* for the complainant and defendant Brittain.

*Mr. Edwards,* for defendant Jones.

THE ASSISTANT VICE CHANCELLOR :—The frame of the bill has been objected to, on the ground that no relief can possibly be given but the redemption of the leasehold premises, and for that purpose the complainant ought to have sold the right of Brittain at law, purchased it, and then come into court distinctly for redemption. It is a creditor's bill ; and if the debt to Jones has been discharged, or there is any residuary value in the property assigned by way of mortgage, that interest was an equity which could be reached by such a bill; and admitting it could in general be reached at law, yet in the present case, there was a propriety or even necessity for coming here from the complexity of the accounts, and for the benefit of a discovery. Again, it is settled that a judgment creditor may file a bill to redeem leasehold property mortgaged by his debtor, provided he has issued an execution at law. (*Shirley* v. *Watts,* 3 *Atk.* 300.)

With respect to the leasehold premises on the easterly side of Ridge-street, assigned to Jones by instrument of the 17th of June, 1837, the bill states, that the assignment, if made for a valuable consideration, was in the nature of a mortgage, and so declared to be by the parties thereto, and that any debt or claim at that time due has been fully paid and satisfied, and that Brittain has been in full possession. The allegations respecting the property on the westerly side of Ridge-street are the same. The prayer is, that the said assignments may be decreed to be in the nature of mortgages, and if found to be paid and satisfied,

may be cancelled or may be assigned to a receiver; with the general prayer.

It is objected that there is not in the bill an offer to pay the amount due. I do not find in the precedents that such an offer is distinctly made. The form is, that upon payment of what, if any thing, shall be found due in respect to principal and interest, the mortgagee may be decreed to deliver possession, &c. (*Willis' Eq. Pl.* 165.) Neither can it be essential; because no decree is ever made upon such a bill for the payment of the amount personally. If the amount found due is not paid, there is a decree of dismission with costs, which is equivalent to a decree for foreclosure. (*Bishop of Winchester* v. *Paine,* 11 *Vesey,* 199.) I treat the bill as substantially one to redeem the premises.

In this view of the cause it must necessarily be sent to a master to state an account as to the leasehold premises.

The question next arises as to the property comprised in the bill of sale.

A great mass of testimony has been taken upon the question of Brittain's intoxication at the time of the execution of this instrument. I consider it wholly irrelevant under the pleadings. The complainant in his bill assails this transfer, not upon the ground of the incapacity of Brittain to execute it from inebriety, but upon the ground of his colluding with Jones to defeat the claim of the plaintiff, then in course of prosecution. This allegation presupposes sufficient capacity to arrange a scheme to defraud, and is inconsistent with an allegation of utter incompetence to understand his own acts, arising from actual intoxication or habitual intemperance. The bill expressly charges that with the view of defeating this claim, Brittain executed a certain mortgage of goods and chattels, &c., of which Jones was put in possession; and adds, that if any *bona fide* claim was due to him, it had been fully paid. I do not think that the complainant has succeeded in making out a case sufficient to set aside this assignment entirely. Although the suit at law was commenced, there is evidence enough that an actual debt was due to Jones when the bill of sale was executed. But from the testimony, especially

the subsequent declarations of Jones, I am satisfied that this paper ought to be declared a mortgage or security merely, and that the sum of six hundred dollars, the consideration expressed, ought not to be taken conclusively as the value of the property transferred. The evidence upon the value is very contradictory. The complainant has a right to further inquiry if he requires it, at the risk of costs.

As to the debt owing to Jones, I am so well satisfied of the amount of the debit side of the account on the day of the first and last assignment, that I shall exclude any inquiry upon that point. In the answer it is averred, that the sum of $1,621 was due at the time of the second assignment, viz. the 28th of September, 1837. The exhibit A produced by the complainant, in Jones' writing, makes the amount due on the 20th June, $1,421 39; and by examining exhibit 6, (the account,) it will be seen, that this sum is about the amount of the items at that period. Between that period and the 13th of November, further charges are made, making the account $1,678. And in corroboration of this, Woolley deposes, that about the end of 1837, or beginning of 1838, the parties met and had something of a settlement, at least a statement was exhibited, and about $1,500 claimed to be due by Jones.

It then appears, that the sum of $100 was received by Jones from Mr. Livingston, on the 8th of November, and $125 on the 23d of December, 1837. Now for these sums no credit is given. The money plainly belonged to Brittain. It may be, as suggested, that Jones had a right to it on some other account. That item is a proper subject for further inquiry.

The checks which were produced, drawn by Harker, I apprehend have nothing to do with the account. Although Jones' name is upon them, yet in some cases the names of other persons are found there after his name, and from Harker's testimony it may well be, that the names were put upon them with a view to raise the money before their maturity, as it was Harker's custom to make them payable some days ahead. Again, the presumption is, that when

they were handed to Jones, and he endorsed them, he gave consideration for them. I will not exclude the complainant from showing that Jones received the moneys, and that they should go to a general account; but the whole burthen of proof must be upon him.

The next subject of consideration is as to the improvements upon the premises. The answer states, that the sum of eight hundred and twenty-one dollars has been expended by the defendant in taxes, assessments, and repairs indispensable to keep the premises in order. No detail is given of the items of this disbursement. The possession was about one year, during which this expenditure was made. The first assignment was in June, 1837, and the answer was filed in July, 1838.

It does not seem probable that such an expense was necessary to pay taxes and necessary repairs for one year. But it may be so, and it is precisely a fitting case for a further inquiry before a master.

The rule of the court is clearly stated in the case of *Clark* v. *Smith*, (*Saxton's New-Jersey Rep.* 123.) I have but to disapprove of one position of the learned chancellor in his able opinion. He joins some other judges in disallowing premiums of insurance paid by a mortgagee in possession. To the cases cited by him may be added a case before Chancellor Sandford. (*Fause* v. *Winans*, *Hopkins' Rep.* 283.) When a master in chancery I have often had to reject claims for such an allowance; and my experience has perfectly satisfied me of the injustice and impolicy of the decision. I trust to see it overruled by the competent authority.

But upon the subject of improvements the Chancellor holds this language : " I have no hesitation in saying, that " when a mortgagee in possession undertakes, without con- " sent of the mortgagor, to make improvements on the pro- " perty, though they may be of a beneficial and permanent " character, he does it at his peril, and has no right to look " to the mortgagor for an allowance. It would be unjust " that he should be at liberty to improve it as he thought

" most beneficial to himself, and thereby, perhaps, deprive " the mortgagor of the power of redeeming."

The cases cited by the complainant's counsel are adverted to by the chancellor.

He then proceeds to discuss the point as to what repairs are to be allowed to the mortgagee in possession. He adopts the rule that they must be " necessary repairs," and that this phrase is to be construed strictly ; and he applies the doctrine to the case before him thus. The property was a cotton mill and machinery, and Haight, the mortgagee, after getting possession, had expended considerable money upon it. " If," says the Chancellor, " the mill " could have been used with the machinery as it was when " Haight voluntarily took possession of it ; if the repairs " made were for the purpose of increasing its speed, or ena- " bling it to do a greater amount of work than it had for- " merly done when its machinery was in order, so as to " enhance the benefit of the possession, then no allowance " is to be made for the repairs."

The decree as to this point must be governed by this principle.

. The rents received, or with which the defendant is properly chargeable, are a fitting subject of examination before a master.

The following was one of the heads of the decree :

The master to ascertain what amount has been received by the said defendant Jones for the rents and profits of such leasehold estate from the said 17th day of June, 1837, to the day of his report, or which with ordinary diligence might have been received by him, and to charge him with the same, and to allow the said defendant for all taxes, assessments and other public impositions upon such premises paid by him, together with all sums of money expended upon the same.for the purpose of keeping the same in as good condition and repair as they were in when the said premises were taken possession of by him. And in case any claim shall be made before such master for an allowance for any expenditure, which in the opinion of the master is not allowable under this direction, then that

such master be at liberty to inquire into the nature and object of such expenditure, and to report any testimony he may take respecting the same to this court, if requested by either party so to do.

Give the usual directions for the examination of parties and production of books.

Reserve the question of costs and further directions until the coming in of the report.