## LOWMAN v. LOWMAN ET AL.

[No. 15,462. Filed February 16, 1938. Rehearing denied March 29, 1938.]

*Brubaker & Rockhill, Gochenhour & Graham* and *Ezra Graham,* for appellant.

*L. W. Royse* and *Widaman & Widaman,* for appellees.

CURTIS, J.—This cause of action in the trial court was upon the appellant's amended complaint in two paragraphs against the appellees. In legal effect each paragraph was identical, the only difference being a slight change in the allegations which sought to bring in the appellee Thelma F. Lowman who is the wife of

Samuel M. Lowman, the other appellee. To each paragraph of the amended complaint the appellees filed their separate demurrers for want of sufficient facts, which were sustained by the court. The appellant thereupon refused to plead further and elected to stand upon his amended complaint and the rulings on the demurrers thereto, whereupon the court entered a judgment that he take nothing and that the appellees recover their costs. It is from that judgment that this appeal was prayed and perfected, the only error assigned being alleged error as to said rulings on the demurrers.

The errors assigned and relied upon for reversal are:

"1. The court erred in sustaining the demurrer of the appellee, Samuel M. Lowman, to appellant's first paragraph of amended complaint.

"2. The court erred in sustaining the demurrer of the appellee, Thelma F. Lowman, to appellant's first paragraph of amended complaint.

"3. The court erred in sustaining the demurrer of the appellee, Samuel M. Lowman, to appellant's second paragraph of amended complaint.

"4. The court erred in sustaining the demurrer of the appellee, Thelma F. Lowman, to appellant's second paragraph of amended complaint."

We now quote from the appellant's brief as follows: "Appellant concedes that unless a cause of action is stated in his complaint against the appellee, Samuel M. Lowman, the complaint cannot be good as against the appellee, Thelma F. Lowman. Since the only difference between appellant's two paragraphs of complaint are in allegations relating to the appellee, Thelma F. Lowman, appellant's first paragraph of complaint containing this statement, to wit:

" 'That the defendant Thelma F. Lowman furnished no part of the consideration for said real estate.'

and appellant's second paragraph of complaint omitting that statement and containing this statement, to wit:

"'That on the 6th day of March, 1929, at the time of the conveyance of said real estate to defendants, the defendant Thelma P. Lowman had notice and knowledge of all the terms and provisions of the aforesaid agreement by and between the plaintiff and the defendant, Samuel M. Lowman.'

and the two paragraphs of complaint being otherwise identical, appellant cites his propositions, points and authorities first and together as they relate to his assignments of error Numbers 1 and 3 and follows with those relating to his assignments of error Numbers 2 and 4 separately."

Concerning the above matter the appellees in their brief make the following statement: "The complaint is in two paragraphs. These two paragraphs are identical, except in the averments which seek to state a cause of action against the appellee Thelma F. Lowman." In view of the above statements of the parties we deem it unnecessary to set out the second paragraph of the amended complaint at length or to set out the demurrer addressed thereto. The special allegations of the first and second paragraph as to Thelma F. Lowman which have previously been set out would make the amended complaint good as to her provided it is held good as to her husband.

The first paragraph of the amended complaint among other things alleged in substance that the defendants (appellees) are husband and wife and that the said Samuel M. Lowman is the son of the plaintiff (appellant); that on March 6, 1929, the plaintiff was the owner of a one-half interest as tenant in common with a third person of certain described real estate; that on said date a partition proceeding was pending in the

Kosciusko Circuit Court and that in said proceeding the court found that said real estate was indivisible and ordered that it be sold by commissioners appointed by the court and that such commissioners entered upon the discharge of their said duties and gave notice of said sale; that on said March 6, 1929, the said Samuel M. Lowman was indebted to the plaintiff in the sum of $876.00 for money had and received by him in April, 1928, for the use and benefit of the plaintiff; that on March 6, 1929, the plaintiff agreed with the defendant Samuel M. Lowman that he would permit him to use for the purpose of purchasing all of said real estate the said sum of $876.00 and that the plaintiff would also obtain the agreement of the said commissioners to accept receipts of the plaintiff for the amounts to be determined to be due him on distribution for such sale, in lieu of purchase price, to the amount of such receipts in the event that the said defendant Samuel M. Lowman purchased said real estate at such sale; that the receipts so furnished the said defendant amounted to the sum of $1,484.76 and were used by the said defendant in the purchase of said real estate, title to which was taken in the name of both appellees; that the defendant Thelma F. Lowman furnished no part of the consideration for the purchase of said real estate; that the plaintiff would also assign and deliver to the said Samuel M. Lowman all other property of every kind and character which the plaintiff owned consisting of household goods, an automobile and farming implements and utensils of the value of $800.00; that the plaintiff fully carried out all of his said agreements and that in consideration thereof the said defendant agreed to furnish the plaintiff who was then 71 years of age a comfortable home in his household for the remainder of his life, furnish him board, lodging and clothing and medical and surgical attention and at his death furnish his

body a decent and respectable burial. We now quote from the first paragraph of the amended complaint some of the other allegations, to wit: "That thereafter the defendant, Samuel M. Lowman, wholly failed, refused and neglected to comply with the terms of said contract by him to be performed in this, that the defendants took the plaintiff into their home and for a time furnished him with board and lodging but treated him with such harshness and cruelty as to make his living with them unbearable and impossible; that he became acutely and dangerously sick and afflicted with a tumor of the bladder, from the aggravation of conditions which had been in existence at the time of making the agreement and contract aforesaid and in the contemplation of the defendant Samuel M. Lowman at such time, and plaintiff became in urgent need and requirement to save his life of a surgical operation, but the defendant, Samuel M. Lowman, refused to permit such operation to be performed and prevented the plaintiff from obtaining the same for a period of four months, during which time the plaintiff was compelled to endure the most intense pain and torture as a result thereof, and finally plaintiff procured such necessary operation to be performed at a hospital and the defendant refused to pay the necessary hospital bill therefor and the necessary surgeon's bills therefor and when plaintiff was ready to be discharged from the hospital, refused to thereafter furnish him a home, or board or lodging or clothing, the plaintiff then and there having demanded of the defendant Samuel M. Lowman performance of his contract aforesaid, and the defendant Samuel M. Lowman then and there wholly broke and repudiated the obligations of his contract aforesaid.

"That the plaintiff, in his weak and disabled condition, was compelled to seek a home elsewhere, although he was destitute and absolutely without money, means or

property, all of which had been turned over to the defendant, leaving the plaintiff penniless and the plaintiff has ever since been forced, by reason of the conduct of the defendant, to subsist on public charity in the county poorhouse at public expense.

"That by reason of the premises the plaintiff became entitled to and did rescind said contract and notified the defendants of his election to rescind, and of his rescission of said contract and thereupon became entitled to the return of the whole consideration turned over to the defendant Samuel M. Lowman in the sum of thirty-two hundred dollars ($3200.00), and that plaintiff thereafter, and before the commencement of this action demanded of the defendant Samuel M. Lowman return of all the consideration for such contract so turned over to him, and of plaintiff's interest in said real estate, all of which the defendant refused to do, and that the said sum is now due, unpaid and owing from the defendant, Samuel M. Lowman, to the plaintiff together with interest thereon from and after the 14th day of May, 1930.

"That to secure the repayment of said sum to this plaintiff by the defendant, Samuel M. Lowman, the plaintiff has and holds a vendor's lien on the real estate above described, being the northeast quarter ($\frac{1}{4}$) of the northeast quarter ($\frac{1}{4}$) and the east half ($\frac{1}{2}$) of the northwest quarter ($\frac{1}{4}$) of the northeast quarter ($\frac{1}{4}$) of Section Twenty-seven (27), Township Thirty-one (31) North, Range Five (5) East, in Kosciusko County, Indiana, and is entitled to have the same foreclosed and the said real estate ordered sold to satisfy his claim.

"That the plaintiff is now ready and willing that the defendant Samuel M. Lowman be compensated, out of plaintiff's property in the possession of the defendants, for the services he rendered to plaintiff under the contract aforesaid up to the time of the repudiation thereof

by the defendant, Samuel M. Lowman, but that the plaintiff cannot now offer to pay the said defendant therefor for the reason that as hereinbefore set forth, the plaintiff heretofore assigned, set over, delivered and turned over to said defendant all his property of every kind and character and the defendants retain possession thereof at this time, and the plaintiff makes this offer for the purpose of doing equity to the defendant, Samuel M. Lowman, and he asks the court to allow said defendant, out of plaintiff's property in his possession, the reasonable value of such services so rendered to plaintiff by said defendant.

"WHEREFORE, plaintiff demands judgment against the defendant, Samuel M. Lowman, in the sum of Three Thousand Nine Hundreds Dollars ($3900.00) and asks that said vendor's lien be foreclosed and the aforesaid real estate be ordered sold to pay and satisfy plaintiff's debt and costs, and for all further and proper relief the premises may require."

As previously stated the demurrer was addressed to each paragraph of the amended complaint and was for want of sufficient facts to constitute a cause of action. We set forth a copy of the memorandum attached to the demurrer of Samuel M. Lowman as follows:

"And for his memorandum showing wherein each of said paragraphs of complaint is insufficient for want of facts the defendant says:

"1. That each of said paragraphs fails to state facts showing that this defendant had before the bringing of this action failed or refused to perform his part of the contract averred in the complaint.

"2. That each of said paragraphs of complaint fails to state facts showing wherein the plaintiff was damaged by reason of defendant's alleged failure and refusal to perform his part of the alleged contract.

"3. That each of said paragraphs of complaint fails

to state facts showing the nature and extent of the damages suffered by plaintiff on account of the alleged failure and refusal of this defendant to perform his part of the alleged contract.

"4. That each of said paragraphs fails to aver facts showing that the plaintiff before bringing this action requested and demanded of this defendant that he perform his part of said alleged contract.

"5. That neither of said paragraphs allege facts sufficient to show that the said alleged contract was rescinded by the mutual consent of both the plaintiff and this defendant before the bringing of this action.

"6. That neither of said paragraphs state facts sufficient to authorize the plaintiff upon· his own volition and without the consent of the defendant to rescind said contract so averred therein, and to declare a forfeiture of the consideration received by this defendant.

"7. That each of said paragraphs fail to state facts showing that the plaintiff before he rescinded said contract requested and demanded of this defendant that he perform his part of said contract, and a refusal of this defendant so to do, and then notified this defendant that on account of such refusal, he, the plaintiff, rescinded said contract.

"8. That each of said paragraphs fails to state facts showing that the plaintiff instituted this suit without delay, after having so rescinded said contract.

"9. That neither of said paragraphs state facts sufficient to entitle plaintiff to a lien upon the real estate described in the contract for any sum whatever.

"10. That neither of said paragraphs state facts sufficient to show that plaintiff before the bringing of this action paid this defendant nor that he offered to pay this defendant for the services rendered to plaintiff under the contract alleged in this complaint.

"11. That neither of said paragraphs state facts suf-

ficient to show that the plaintiff is now ready and willing to pay this defendant for the services he rendered plaintiff under the contract averred in the complaint."

The appellees seek to sustain the ruling of the trial court upon the demurrers and advance the following propositions: 1st. "Appellant's right of action, if any, was by a suit at law to recover a money judgment for damages and not an action in a court of equity." 2nd. "The appellant is not entitled to a rescission of the contract so averred to have been made with appellee Samuel M. for these reasons: (a) That in seeking equity he has not shown that he had done equity. (b) The appellant has not shown that he has placed the appellee Samuel M. in the same position he was in before the contract was made, nor that he has restored to said appellee all he received under the contract. (c) Appellant has not shown that said contract was rescinded by him as to all of its parts. (d) Appellant has not shown that in his election to rescind such contract, he acted promptly and without unreasonable delay after the discovery of his right to rescind." 3d. "The appellant does not hold a vendor's lien upon the real estate described in his complaint for these reasons: (a) That appellant was not the vendor of the real estate upon which he seeks to establish such lien. (b) No vendor's lien would arise out of the transaction because personal property was included in the sale made by appellant to appellee Samuel M. (c) No vendor's lien would arise in favor of appellant because the consideration he was to receive from Samuel M. was his support." 4th. "The appellant is not entitled to a vendor's lien because he furnished appellee Samuel M. part of the money with which he purchased the real estate."

Before proceeding further with an examination of the questions presented we deem it appropriate to quote

with full approval from some of the cases. From ■ *Huffman* v. *Ricketts* (1916), 60 Ind. App. 526, 532, 111 N. E. 322, as follows: "Contracts by which aged and infirm persons convey all or a substantial part of their property to others in consideration of an agreement for support, maintenance and care during their declining years, are with practical uniformity recognized by the courts as constituting a class by themselves in matters pertaining to their interpretation and enforcement. 'There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for.' *Bruer* v. *Bruer* (1909), 109 Minn. 260, 123 N. W. 813. See also *Brady* v. *Gregeory*, 49 Ind. App. 355, 97 N. E. 452; *Cree* v. *Sherfey* (1912), 138 Ind. 354, 37 N. E. 787. . . ." In the case of *Cree, Admr. et al.* v. *Sherfey, supra,* the Supreme Court of this state quoted with approval from 28 Central Law Journal, page 321, as follows (p. 359) : " 'Conveyances of property by aged and infirm people to their children, in consideration of promised support and maintenance, are somewhat peculiar in their character and incidents, and must sometimes be dealt with by the courts on principles not applicable to ordinary conveyances. A person incapacitated by the infirmities of age for active pursuits naturally feels a strong desire to place the fruits of his industry and enterprise where they will secure him, during the remnant of his life, a suitable and proper maintenance, without further care or labor on his part.

One thus situated also naturally prefers to convey his property to his child for that purpose, and that his child, and not a stranger, should assume the obligation to maintain him. Paternal affection thus prompts him, and he relies upon the filial affection of his child for the faithful and cheerful performance of the obligation. And thus it is when an aged and infirm father conveys his property to his son, in consideration that the son shall care for and maintain him during the remainder of his life, elements enter into the transaction peculiar to such cases. Such a transaction . . . is prompted often by necessity, always by affection for, and trust in, the son to whom he has transferred his means of support. Besides, the age and infirmity of the father may unfit him in a degree properly to protect his own interests, and may render him subject to imposition. Hence it is that we seldom find in such transactions evidence of that deliberation and careful regard to self-interest on the part of the father, which usually characterize ordinary business transactions of the same magnitude. Because of these and other considerations peculiar to a case like this, it is the duty of the son, and he should regard it as his highest privilege, fully to perform his agreement. This is not only a moral and religious duty, but it is a duty of which a court of equity will take cognizance, and grant a proper relief for its nonperformance." See also the case of *Jancovech* v. *Christensen* (1935), 100 Ind. App. 299, 195 N. E. 267. These cases do not mean that courts will exercise an unbridled liberty to disregard the rules of law and equity ordinarily applicable but they do mean that in the application of such rules to a case of the character of the instant case that the court will exercise its conscience liberally under the rules of law and equity to the end that in the relief granted mere form and technicalities will not be allowed to defeat the purposes evidently in-

tended by these aged and infirm persons in the contracts which they make for their future security.

The appellees in their first proposition assert that the appellant's right of action, if any, was to recover a money judgment for damages and not an action in a court of equity.

It must be remembered that this is not an action for specific performance of an executory contract for personal service. It is an action seeking to rescind a contract by which contract the appellee, Samuel M. Lowman, agreed to support the appellant for the remainder of his life, but which contract, according to the allegations of the complaint, was breached by the said Lowman. It is clear that the allegations of the complaint are that said Lowman was in effect given the sum of $876.00 plus the sum of $1484.76 to use in the purchase of real estate, which said real estate had been formerly owned by the appellant together with another person as tenants in common. In addition to the said two sums of money the appellee, Samuel M. Lowman, was given an additional amount of property of the value of $800.00. The allegations are that the first two sums of money were used in the purchase of the said real estate and that as a consideration for the appellant making said sums available together with said other property of the value of $800.00 for the use of the said appellee, Lowman, he agreed to support the appellant for the remainder of his life, furnish him food, lodging, clothing and medical and surgical attention and that the said Lowman refused to perform his part of the contract, having in the meantime taken, according to the complaint, every dollar of the appellant's property and money, leaving said appellant penniless.

The further allegations are that when the said Lowman refused to perform his part of the contract the appellant found it necessary to place himself upon pub-

lic charity, which he did in order to obtain an operation for ulcer of the bladder and that when he recovered from said operation said Lowman refused to allow him to return to the home and that by reason thereof it became necessary for the appellant to become a ward in the county poor home, which he did.

The appellees now say that the appellant is not entitled to a rescission of the contract for the reason that the appellant is seeking equity and has not shown by his complaint that he has done equity, that is, that he has not shown in his complaint that he has placed the appellee, Samuel M. Lowman, in the same position he was in before the contract was made and has not restored to said appellee all that he received under the contract and that the appellant has not shown that the said contract was rescinded by him as to all of its parts and that he has not shown further that his election to rescind was made promptly and without unreasonable delay after the discovery of his right to rescind.

One cannot read the allegations of the amended complaint which the demurrer admits to be true without at once noting that it is alleged that the appellant gave up to the appellee Samuel M. Lowman, his son, everything he had in the way of worldly goods and property in consideration of which the son was to give the father a home and support during his life. After the appellant had fully carried out his part of the bargain according to the amended complaint, the appellee Lowman repudiated his obligations and he now says that his father is not doing equity in that the father has not offered to place the appellee in the same position he was in before the contract was made. In this position the appellees are entirely wrong.

In the case of *Higham* v. *Harris* (1887), 108 Ind. 246, 8 N. E. 255, our Supreme Court in an opinion by Judge

Mitchell clearly and forcefully stated the law to ■ be as follows (p. 254) : "It is to be observed, too, that.the strict rules requiring a tender of all the benefits received under a contract as a prerequisite to the maintenance of a suit to recover property, the possession of which may have been parted with under a contract, have peculiar application to suits at law which proceed upon the theory that rescission has already taken place by the act of the party aggrieved.

"Where a suit in equity is brought, the purpose of which is to secure the rescission of the contract, it is sufficient for the plaintiff to show in his complaint that he has substantially preserved the *status quo* on his part, and to offer to restore that which he has received under the contract. In like manner, where, in a case of equitable cognizance, a contract which for any reason ought not to be enforced, is insisted upon, it will be sufficient if the party whose rights are to be affected by such contract, makes it appear that he has done nothing which has made it impossible for the court to decree a rescission, in case the facts warrant it. In such cases the decree of the court can be so moulded as to protect the rights of all the parties. *Shuee* v. *Shuee,* 100 Ind. 477, and cases cited; *Allerton* v. *Allerton,* 50 N. Y. 670; *Gould* v. *Cayuga Co. Nat'l Bank,* 86 N. Y. 75; *Hammond* v. *Pennock,* 61 N. Y. 145; *Masson* v. *Bovet,* 1 Den. 69.

"A distinction is, therefore, to be observed between cases at law, which proceed upon the theory that a rescission has been accomplished by the act of the aggrieved party, and suits in equity, in which the decree of a court is invoked in order to obtain the rescission of a contract, or the cancellation of a settlement, and for the adjustment of the rights of the parties on such terms as shall be agreeable to equity and good conscience. In the one case, the injured party must have

seasonably tendered to the other all benefits received, so as to have practically rescinded before suit brought. In the other, he must not have been guilty of laches, and he must have so far maintained the *status quo,* on his part, as that a court of equity can by its decree effectuate a rescission upon equitable terms."

We think the instant case falls within the rules announced in the above case. In other words in this case the court would have the power to adjust the rights of the parties and as the PRICE OF THE DECREE the court would have the power to require the appellant to allow out of his recovery such sum or sums as in equity and good conscience would be found to be owing the appellee Lowman for any services which he rendered to the appellant. We understand the law to be that it is within the power of the court of equity where its decree is asked, to require as the price of its decree that the person invoking the decree shall submit to equitable terms and that the court may properly inquire concerning the equities which the plaintiff must do to be entitled to the relief which he asks, and that whenever any benefit has been received under a contract which the court is asked to set aside, that the court will in effect as a matter of conscience direct an account of and repayment of the benefits thus received, and that in a suit such as the instant case where the powers of equity are invoked and are necessary to be invoked in order to obtain a rescission of the contract, that then it is not necessary as a prerequisite to such a suit, that the party asking such decree shall have first made restitution of the benefits received, but that all that is necessary to do is that he shall not have been guilty of laches and that he must have so far maintained the *status quo* on his part as that a court of equity can effectuate a rescission upon equitable terms. The complaint herein contains the necessary allegations as to

the offer to do equity. See *Shuee* v. *Shuee* (1884), 100 Ind. 477, 481, from which we quote as follows: "It is urged that the court below should have sustained a demurrer to the bill, because it failed to show an offer to rescind on the part of the plaintiff before filing the bill, and it is argued that because it appears from the facts as found by the court, that no offer to rescind was made, nor to return the money paid as the consideration of the settlement, before the suit was commenced, the court could make no decree in the plaintiff's favor setting aside the settlement.

"It is always within the power of a court of equity, where its decree is invoked, to require as 'the price of its decree' that the person invoking it shall submit to equitable terms, and accordingly a chancellor always inquires concerning the equities which the plaintiff must do, in order that he may be entitled to the relief which he seeks. Whenever any benefit has been received under a contract which the court is asked to set aside, the court will fasten a trust on the conscience of the party, in respect of such receipts, and direct an account and repayment.

"As was said by the vice-chancellor in the case of *Hanson* v. *Keating*, 4 Hare 1: 'It decides in the abstract, that the court, giving the plaintiff the relief to which he is entitled, will do so only upon the terms of his submitting to give defendant such corresponding rights (if any) as he also may be entitled to in respect of the subject-matter of the suit.' Or as Lord Erskine put it in *Radcliffe* v. *Warrington*, 12 Vesey Jr. 332: 'The question is not, what the court must do, but, what it may do' under all the circumstances. *Quinn* v. *Brittain*, 1 Hoff. Ch. 353; *Hopkins* v. *Snedaker*, 71 Ill. 449; *Whelan* v. *Reilly*, 61 Mo. 565; *Comstock* v. *Johnson*, 46 N. Y. 615; *Willard* v. *Taylor*, 8 Wall. 557; *Miller* v. *Cotton*, 5 Ga. 341.

"If the plaintiff in this case is entitled to have her deed of assignment cancelled, then she will be let in to share in a fund from which she is entitled to receive a much larger sum than she has in her hands, and having offered in her bill, and at the hearing, to submit to such decree as the court should award her, the fact that she did not return, or offer to return, the sum paid her, is no obstacle in the way of the jurisdiction of the court." Bishop. Prin. Eq., section 43.

Neither do we believe that this court would be able to say as a matter of law whether or not the appellant acted promptly and without unreasonable delay after the discovery of his right to rescind. If the appellant has been guilty of such laches as will defeat his cause of action such matter can be appropriately set up as a defense. In the instant case the allegations are that the appellant is penniless, having been rendered so by the fact that he transferred to his said son all of his property of every kind and character. Under such circumstances it was not necessary for him to allege that he has placed the appellee in *status quo*. In view of the further allegation of the complaint to the effect that he is ready and willing to have the court fix the amount, if any, which is owing to the appellees for services rendered to the appellant and that such sum be deducted from the amount for which the appellant asks judgment we think the amended complaint is sufficient in that respect.

We have had no great difficulty in reaching the above conclusions but the remaining question as to whether or not the amended complaint contains allegations sufficient to enable a court of equity to enforce its decree by impressing a lien upon the real estate involved is a more difficult problem. The allegations of the amended complaint show that in the beginning the appellant was the owner of an undivided

one-half interest in said real estate as a tenant in common with a third person; that a suit for partition was filed by one of them and a hearing had in which the court found the land indivisible and ordered it sold by commissioners and the money divided between the appellant and said third person; that when said money was ready for distribution the appellant's share amounted to $1,484.76; that the appellant in carrying out his contract with the appellee Samuel M. Lowman arranged with the commissioners to allow his distributive part to be used by said appellee in the purchase of said real estate at the commissioners' sale; that in addition the appellant in further pursuance of his said contract with the said appellee allowed said appellee to use $876.00 of additional money belonging to the appellant which the said appellee then had in his possession, in the purchase of said real estate, making a total of $2,360.76 of the purchase price of said real estate; that it thus appears that approximately 80% of the purchase price of said real estate was furnished by the appellant to the said appellee and used by him. If the conveyance had been made directly by the appellant to the appellees we think an equity court would have no difficulty in holding that the said conveyance, being made upon a condition subsequent, which was breached by the appellees, would either be set aside or the real estate impressed with a lien in favor of the appellant. See *Huffman et al.* v. *Bence, Admr.* (1890), 128 Ind. 131, 27 N. E. 347; *Hamilton et al.* v. *Barricklow et al.* (1884), 96 Ind. 398; *Zoellers* v. *Loi, Admr.* (1918), 68 Ind. App. 395, 120 N. E. 623. But the allegations are that the conveyance was made to the appellees by the commissioners appointed by the court to make the sale in the partition proceedings. Will this fact alone be sufficient to prevent the court from enforcing its judgment by an equitable lien? We think not. Equity will look through the transaction and consider not

alone its form but also its substance. We quote from *Barrett* v. *Lewis* (1886), 106 Ind. 120, 121, 5 N. E. 910, the following:

"The lien which arises in favor of the vendor of land, or of the person to whom purchase money is due, is peculiarly of equitable cognizance. Equity has regard in such cases as in others, for the substance, and not the mere form of the transaction. Disregarding form, a court of equity will not permit substantial equities, which are clearly established, to be defeated by the interposition of merely nominal or technical distinction. · If, upon looking through the transaction, it appears that a debt is in fact part of the purchase price of land acquired in the transaction out of which the debt arose, no other obstacle intervening, a lien will be declared upon the land so acquired in favor of the person to whom such debt is due."

Under the allegations of the amended complaint the prayer of which was that the appellant have "judgment against the defendant Samuel M. Lowman in the sum of $3900.00", we think that at all events a cause of action was stated. The appellees make a similar contention to the one made in the *Zoellers* v. *Loi, Admr.* case, *supra*. We quote from that case as follows (p. 397):

"Appellants contend that the complaint in theory proceeds to·the end that a vendor's lien may be declared and enforced against the farm; that it is not sufficient on that theory or in its relation to any such lien, and that as a consequence the court erred in its ruling on the demurrer. Under our system of procedure, if the complaint discloses that the plaintiff is entitled to a personal judgment on the claim which he seeks to establish, the ruling on the demurrer was correct, regardless of its sufficiency in its relation to the alleged lien.

*Miller* v. *Gates* (1916), 62 Ind. App. 37, 112 N. E. 538, and cases; *Howe* v. *Dibble* (1873), 45 Ind. 120."

A good cause of action having been stated against Samuel M. Lowman it follows that since the allegations show that Thelma F. Lowman paid no part of the consideration for the purchase of said real estate and took title with full knowledge of the agreement between her husband and the appellant that a good cause of action is likewise stated as to her.

We assume that in the trial of this cause under such issues as are finally made the trial court will weigh the equities each may have against the other and will render its judgment doing full equity between the parties in accordance with this opinion. Judgment reversed with instructions to overrule the demurrer to each paragraph of the amended complaint and for further proceedings not inconsistent herewith.