[Cite as *State v. Williams*, 2015-Ohio-3245.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 14CAA100064 |
| | : | |
| JAMES J. WILLIAMS | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court
                              of Common Pleas, Case No. 14 CR 1
                              05 189 A

JUDGMENT:                     AFFIRMED PART, REVERSED IN
                               PART, AND REMANDED

DATE OF JUDGMENT ENTRY:       August 10, 2015

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

CAROL HAMILTON O'BRIEN                   TODD A. WORKMAN
DELAWARE CO. PROSECUTOR                  P.O. Box 687
ANDREW M. BIGLER                         Delaware, OH 43015
140 North Sandusky St., 3rd Floor
Delaware, OH 43015

*Delaney, J.*

{¶1} Appellant James J. Williams appeals from the September 15, 2014 Judgment Entry of Prison Sentence in the Delaware County Court of Common Pleas. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} Bethany "Buffy" Bunting is an admitted drug dealer and Nick Brown was one of her frequent customers. At the time of these events, Brown lived with his girlfriend Samantha Cook at 126 Pumphrey Terrace in Delaware, Ohio, and both were heavy users of heroin. Brown bought heroin from, and frequently associated with, appellant James J. Williams, who is married to Amanda Williams ("Williams"). Other associates of the group are appellant's co-defendant Jake D. Lloyd and Lloyd's girlfriend Destaney Deweese.

{¶3} On February 19, 2014, Brown, Cook, appellant, Williams, Lloyd, and Deweese were present at the Pumphrey Terrace address when Brown mentioned he knew Bunting. Appellant became "excited" because Bunting once stole from him and he now sought revenge. He asked Brown to help him "set up" Bunting by calling and asking her to come to the house. The group planned that appellant and Lloyd would wait outside and jump Bunting upon her arrival. After the robbery, Brown would come to the door as if he had no knowledge of what happened so Bunting would not realize he set her up. Brown agreed to the plan because he owed appellant money and wanted free drugs.

{¶4} Brown duly called Bunting and asked her to bring him 20 oxycodone pills. Williams and Deweese left the house with two young children in tow. Appellant waited in his green BMW in Brown's driveway and Lloyd hid around the corner of the house.

{¶5} Bunting arrived in her gray Dodge Durango and noticed three cars in the driveway: a red Ford Focus she recognized as Brown's; a blue Honda Civic she recognized as Cook's; and a green BMW she was not familiar with. As she approached the house, she heard a car door close behind her and someone ran up and struck her in the head. Another man appeared and said "give me all your money." Bunting said her attackers were one black male and one white male, both with their faces covered. The men ripped her shirt and clothing as the black male repeatedly hit her in the back of the head with a gun. Both men struck her and demanded her money, pills, and keys. The black male said "How does it feel when someone takes something from you?" and Bunting said she didn't know what they were talking about.

{¶6} As the beating took place, Brown and Cook hid in the garage. They heard appellant and Lloyd tell Bunting to shut up and heard Bunting ask who she ripped off. Eventually the men stopped beating her and grabbed approximately $90 and 19 pills. Bunting still had her car keys in her hand. She saw the men take off in the dark-colored BMW and she followed them a short distance in her Durango. When Brown and Cook heard the two vehicles leave, they ran to Brown's red Ford Focus and drove off. Bunting turned around to return to Brown's house and passed Brown and Cook.

{¶7} Bunting next went to Kintz' Bar and told her mother about the assault. Bunting and her mother, along with several men armed with bats and pipes, returned to Brown's house. Bunting threw a metal sewer grate through the windshield of Cook's

Honda Civic and threw a television through the glass doors of the house. The group did not make contact with Brown, Cook, or the assailants.

{¶8} Meanwhile, Brown and Cook went to appellant's residence on Home Road in Powell, Ohio. Brown testified appellant was at the kitchen sink washing his hands and a gun covered in blood. Cook also testified to seeing the gun in the sink as well. The group divided the cash and pills taken from Bunting.

{¶9} On March 9, 2014, appellant called Brown and Cook and ordered them to come to his house because he was afraid he was about to be raided by the police. Earlier, appellant had threatened a neighbor with a gun. The neighbor lived across the street from appellant, and when Brown and Cook arrived, police were present at the neighbor's house. Appellant gave Brown a bookbag containing ammunition and placed three firearms in Cook's purse. Appellant and Williams left in one car followed by Brown and Cook in another vehicle. Both vehicles were immediately stopped by police and the firearms were found. All were arrested.

{¶10} Brown and Cook agreed to testify against appellant and co-defendant Lloyd in exchange for plea deals resulting in treatment in lieu of conviction.

{¶11} A search warrant was executed at appellant's residence after the arrest and law enforcement found a rifle and 1.9 grams of heroin. Appellant is prohibited from owning or possessing firearms.

{¶12} Appellant and Lloyd were charged by indictment with one count of aggravated robbery with a firearm specification [Count I] and one count of felonious assault [Count II]; appellant was also charged with one count of aggravated menacing [Count III]; one count of tampering with evidence [Count IV]; one count of having

weapons while under disability [Count V]; and one count of possession of heroin [Count VI]. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Count VI, possession of heroin, was dismissed pursuant to Crim.R. 29(A). Appellant was otherwise found guilty as charged on July 17, 2014.

{¶13} On July 23, 2014, appellant filed a Motion for New Trial asserting a juror failed to follow the instructions of the trial court. A juror purportedly told one of the prosecutors after trial "I don't think you did a very good job. I don't think you satisfied your burden." Appellee responded with a motion in opposition and an oral hearing took place on August 20, 2014. By entry dated August 22, 2014, the trial court overruled the motion for new trial. Appellant then moved for the trial judge to recuse himself because he was a witness to the alleged juror misconduct.

{¶14} On August 25, 2014, the original trial judge voluntarily recused himself and vacated the judgment entry denying the motion for new trial. A visiting judge was appointed and the motion for new trial was again overruled by entry dated September 15, 2014. Appellant was sentenced to an aggregate prison term of ten years.

{¶15} Appellant now appeals from the trial court's judgment entries of conviction, sentence, and denial of new trial.

{¶16} Appellant raises two assignments of error:

## ASSIGNMENTS OF ERROR

{¶17} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR A NEW TRIAL BASED UPON THE CLEAR EVIDENCE OF A JUROR FAILING TO FOLLOW JURY INSTRUCTIONS GIVEN BY THE COURT."

{¶18} "II. APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE COURT FAILED TO INFORM HIM OF THE DETAILS OF POST-RELEASE CONTROL AND THE CONSEQUENCES OF VIOLATING THE TERMS OF POST-RELEASE CONTROL AT THE TIME OF SENTENCING."

**ANALYSIS**

I.

{¶19} In his first assignment of error, appellant argues the trial court should have granted his motion for new trial. We disagree.

{¶20} "A motion for new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Appellant's motion for new trial is premised upon Crim.R. 33(A)(2), jury misconduct. Appellant asserts a juror did not follow the instructions of the trial court because she told the prosecutor he did not meet his burden yet voted to convict appellant.

{¶21} An oral hearing took place before the visiting judge upon appellant's motion for new trial. One witness testified, an employee of defense trial counsel's law firm. The witness was present in the jury room after trial when counsel was permitted to speak with the jurors. She heard one juror make the statement above. The witness was uncertain of the exact words used and acknowledged she completed the affidavit

accompanying the motion when she had better recall of the incident.  The visiting judge determined appellant presented insufficient evidence to support the motion for new trial because the juror signed the jury verdicts and acknowledged those verdicts when the jury was polled.

{¶22} We agree with the trial court and find the decision overruling the motion for new trial was not an abuse of discretion.  The jury announced its verdicts of guilt as to all five counts and was polled at the request of defense counsel; each juror agreed that the verdict as read by the court was her true verdict. The jury was then discharged, after which the juror made the reported comment.  Appellant infers the juror voted to convict despite not finding appellant guilty beyond a reasonable doubt.  We find this record does not establish any such misconduct occurred.

{¶23} The statement by the law-firm witness essentially evades Ohio's aliunde rule; the witness testified to a juror's statement that is otherwise inadmissible.  The aliunde rule provides that a jury verdict may not be impeached by the statement of a juror unless there is evidence "aliunde," from some other source, to impeach the verdict. *State v. Adams*, 141 Ohio St. 423, 427, 48 N.E.2d 861(1943). As noted in *State v. Reiner*, 89 Ohio St.3d 342, 350, 731 N.E.2d 662 (2000), reversed on other grounds by *Ohio v. Reiner*, 532 U.S. 17, 121 S.Ct. 1252, 149 L.Ed.2d 158 (2001): "The rule is intended to preserve the integrity of the jury process and the privacy of deliberations, to protect the finality of the verdict, and to insulate jurors from harassment by dissatisfied or defeated parties by prohibiting a court from questioning a juror about what occurred during deliberations, or about anything else that may have affected the juror's mind or emotions in the deliberations process once a final verdict is rendered."

{¶24} The record in this case contains only the statement of a witness who observed a juror tell a prosecutor he "did not meet his burden," apparently in the context of telling the prosecutor her opinion of his case at trial. This comment alone is insufficient for us to determine the juror committed misconduct because it does not establish the juror disagreed with the guilty verdicts at the time she signed them or when she openly affirmed them during the jury poll. See, *State v. Stamper*, 33 Ohio App.3d 104, 108-09, 514 N.E.2d 725, 728-29 (1st Dist.1986). "There is no evidence to support a finding that the verdict was anything other than correct in every respect, as well as duly agreed to and signed by all of the jurors considering the case." Id.

{¶25} If the juror did not agree with the verdicts announced in court, she had the chance to say so during the individual jury polling. *State v. Hessler*, 90 Ohio St.3d 108, 121, 2000-Ohio-30, 734 N.E.2d 1237. The function of a jury poll is "to determine whether present 'in open court' unanimous concurrence still exists notwithstanding and independent of whether or not it had existed in the past at the time of the execution of the verdict document." *State v. Rothacher*, 5th Dist. Tuscarawas No. CA1791, unreported, 1984 WL 4445, *2 (Feb. 2, 1984). Under these circumstances, we find the juror "exercised her free will" agreed with guilty verdicts, thus juror misconduct did not "infect[] the jury's deliberations and pollute[] its recommendation" as argued by appellant. *Hessler*, supra, 90 Ohio St.3d at 121.

{¶26} The trial court's decision overruling the motion for new trial was not unreasonable, arbitrary, or unconscionable. Appellant's first assignment of error is overruled.

II.

{¶27} In his second assignment of error, appellant asserts the trial court did not provide sufficient notice of the terms of post-release control and consequences for violation thereof. Appellee concedes the trial court did not fully advise appellant of the consequences of violating the terms of post-release control. For the following reasons, we sustain appellant's second assignment of error and remand this matter to the trial court for the limited purpose of properly imposing post-release control.

{¶28} Appellant was convicted upon Count I, a felony of the first degree, Count II, a felony of the second degree; [Count III, a misdemeanor of the first degree]; Count IV, a felony of the third degree; and Count V, a felony of the third degree. At sentencing, appellant was advised as follows:

> * * * *.
>
> You are further advised that Post Release Control in this case is mandatory on Count 1 for a period of five years for a violation of Aggravated Robbery, a felony of the first degree; Post Release Control is mandatory for a period of three years on Count 2 for a violation of Felonious Assault, a felony of the second degree; and Post Release Control is optional on Counts 4 and 5, Count 4 being Tampering with Evidence in violation of 2921.12(A)(1), a felony of the third degree, and Count 5, Having Weapons While Under Disability, also a felony of the third degree, in violation of Section 2923.12(A)(3) of the Ohio Revised Code, as

well as the consequences for the -- for violating the conditions of Post Release Control imposed by the Parole Board.

* * * *.

T. Motion Hearing and Sentencing, 27.

{¶29} The Judgment Entry of Prison Sentence of September 15, 2014 states in pertinent part:

* * * *.

The defendant is notified that as part of this sentence after completion of the prison term, he shall be subject to a mandatory period of supervision, Post-Release Control, of five years on Count One, and a mandatory period of supervision, Post-Release Control of three years on Count Two. Post-Release Control is optional on Counts Four and Five. For violating Post-release Control conditions, the Adult Parole Authority or Parole Board may impose a more restrictive or longer control sanction, or return the defendant to prison for up to a maximum of 50% of the stated term. If the violation is a new felony, the defendant may receive a new prison term of the greater of one (1) year or the time remaining on Post-release Control, in addition to any prison sentence imposed on the new felony.

* * * *.

{¶30} The trial court did not specify the terms of post-release control upon Counts IV and V, felonies of the third degree. R.C. 2967.28(C) states in pertinent part:

"Any sentence to a prison term for a felony of the third, fourth, or fifth degree * * * * shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordance with division (D) of this section, determines that a period of post-release control is necessary for that offender."  We agree with appellant the trial court did not properly advise him of post-release control upon Counts IV and V.

{¶31} R.C. 2967.28(F)(4)(c) states: "If an offender is subject to more than one period of post-release control, the period of post-release control for all of the sentences shall be the period of post-release control that expires last, as determined by the parole board or court. Periods of post-release control shall be served concurrently and shall not be imposed consecutively to each other."  Appellee argues the trial court's error is essentially harmless because any period of post-release control imposed on Counts IV and V is concurrent with the term properly imposed upon Count I.  Nevertheless, we are required by the Ohio Supreme Court, pursuant to R.C. 2953.08(G)(2), to  "* * * examine the sentencing court's compliance with all the applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law."   *State v. Smalls*, 5th Dist. Stark No. 2013CA00086, 2013-Ohio-5674, ¶¶ 15-16, citing *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, ¶ 4.  The trial court's notification did not comply with R.C. 2967.28(C).

{¶32} The Ohio Supreme Court has held that if post-release control was not properly rendered, the offending portion of the sentence dealing with post-release control is subject to review and correction. *State v. Fischer,* 128 Ohio St.3d 92, 2010–Ohio–6238, 942 N.E.2d 332; *State v. Bezak,* 114 Ohio St.3d 94, 2007–Ohio–3250, 868

N.E.2d 961. The new sentencing hearing to which the offender is entitled is limited to the issue of post-release control. *Id.* See, *State v. Williams*, 5th Dist. Licking No. 14-CA-82, 2015-Ohio-1125 at ¶ 39; *State v. Pryor*, 5th Dist. Fairfield No. 11-CA-12, 2011-Ohio-4383 at ¶ 8.

{¶33} We therefore vacate the portion of appellant's sentence relating to post-release control and remand this matter to the trial court for proper imposition thereof. Appellant's second assignment of error is sustained.

## CONCLUSION

{¶34} Appellant's first assignment of error is overruled and his second assignment of error is sustained. The judgment of the Delaware County Court of Common Pleas is thus affirmed in part and overruled in part, and this matter is remanded to the trial court for resentencing for the limited purpose of proper imposition of post-release control.

By: Delaney, J. and

Hoffman, P.J.

Wise, J., concur.