BURGIN ET AL. *v*. DRIES

[No. 18,974. Filed January 20, 1960.]

250

252

*Wesley T. Wilson, Joseph L. Kivett* and *Kivett & Kivett,* all of Indianapolis, for appellant.

*Garth B. Melson* and *Albert W. Ewbank,* both of Indianapolis, for appellee.

Ax, J.—Two actions were brought by appellee against appellants. One was to set aside a deed of real estate from appellee to appellants for alleged fraud, duress, and undue influence, and the other was for accounting

and money alleged to have been embezzled from appellee.

The action was commenced by appellee's two complaints. The first complaint, No. 14728, to set aside a conveyance, charged that while appellee was enfeebled by a broken hip and his age of 76 years, appellants, for the purpose of defrauding him of his property, took him into their home and, by continuous, persistent, and undue persuasion, and importunity and falsely representing to him that the deed was one of trust only, induced him on March 9, 1951, to convey his real estate to appellants. Appellee asked that said deed be declared void, that the property be reconveyed to him and for one thousand dollars damages.

To this complaint appellants filed an answer in two paragraphs: (1) The first admitting that appellee conveyed the real estate in question to appellants while living in appellants' home some months after a hip injury, but denying that they had obtained said conveyance by undue influence or fraud or as a result of appellee's physical condition, and (2) the second alleging that the conveyance in question was in consideration of all past services rendered and expenditures made by appellants for appellee and his wife or either of them, the agreement by appellants to see to the burial of appellee at his death at a cost not exceeding $1,000 and to place a marker at appellee's grave at a cost not exceeding $300, and for the further consideration that, if appellee would transfer to appellants all his property and income, both real and personal, they would maintain him to the extent of their means for the balance of his life; that appellants accepted said conveyance and entered into said agreement in good faith and, pursuant thereto, had taken appellee into their home, where he still remained, and maintained him with facilities

and care of the reasonable value of $9,000.00 and continuing at the rate of $50.00 per week, and in reliance on the validity of said conveyance had made extensive improvements on said real estate at an expenditure of $6,209.88 for materials and of labor value at $8,742.00. Said paragraph asked that, if said conveyance was set aside, appellants have judgment against appellee for $14,951.88, that it be declared a lien against said real estate, and that said lien be foreclosed.

The second complaint, No. 14733, asking for an accounting and judgment on embezzled funds, charged that while appellee was in the hospital, he turned over to appellants an automobile valued at $325.00, cash on his person in the amount of $912.00, and a bank deposit of $6,060.00; that he had demanded of appellants an accounting of proceeds from the sale of said automobile, said bank deposit, $562.00 cash in appellee's bank book, $350.00 cash in appellee's home, $30.00 in appellee's dresser drawer, $196.00 from a certain check, $25.00 from sale of appellee's coal, $6.00 refund from Power and Light Co., $9.40 cash in appellee's clothing, $20.00 from the sale of a bath tub, an unknown amount from the sale of furniture, and all money received from appellee from his social security from 1948 to Dec. 1, 1954; that appellants had refused to account for said funds and had embezzled them and converted them to their own use, and that appellants had also converted to their own use certain rents collected from appellee's house at 1524-26 Spruce Street in Indianapolis; that all of said personal property was turned over and given to the appellants as trustees to hold for the appellee and all funds were to have been kept intact for appellee and placed into a lock box in trust for his benefit, but that said appellants have embezzled and unlawfully converted said monies to their own use and benefit. The

appellee asked that he receive judgment against appellants in the sum of $15,000.00 for the unlawful embezzlement of said personal property and monies.

To this complaint, appellants filed an answer in two paragraphs. The first paragraph admitted appellee's injury and hospitalization, his ownership of the automobile and bank account, and the demand for accounting, but denied receiving any money in trust from appellee, embezzling such money, or converting any of it to their own use.

The second paragraph by way of counterclaim alleged that on or about March 5, 1953, appellants and appellee entered into an oral agreement whereby appellee should transfer the appellants all his property both real and personal, in consideration of which appellants should acquit appellee of any past indebtedness, keep and maintain appellee within their means so long as he should live, bury him at death at a cost not exceeding $1,000.00, and place at his grave a marker costing not more than $300.00; that pursuant to said agreement appellee transferred to appellants the real estate known as 1524-26 Spruce Street, a deposit in the Merchants National Bank and Trust Co., an automobile, and social security payments totalling $667.50; that pursuant to said agreement appellants kept and maintained appellee in their home, where he had been since Sept. 2, 1952, and where he remains to this date, providing food, lodging, clothing, medical and nursing care, and other living facilities of the reasonable value of $9,000.00 and continuing at the rate of $50.00 per week, which amount appellants asked to have set off against any amount found due appellee.

Appellee failed to reply to the second paragraph of answer in either cause, and the issues were closed.

The two causes were consolidated for trial and trial

was had by court without a jury, which found for the appellee in both causes, the first in Cause No. 14728, finding that the deed of conveyance was obtained from the appellee by the fraud, undue influence and misrepresentations of appellants, and ordering that said deed be set aside and appellants to reconvey said real estate to appellee, and that appellee recover his costs from appellants; and in the second Cause No. 14733, that appellee recover of appellants the sum of $5,437.20 and his costs. Judgment was rendered accordingly.

In both causes, appellants filed motions for new trials specifying several grounds, and upon the court's overruling of said motions, this appeal followed with the only assignment of error that the court erred in overruling each of appellants' motions for new trial.

For the purpose of this opinion we will first give consideration to the complaint in cause no. 14728. The court, as stated above, found for the plaintiff-appellee that the conveyance was obtained from the plaintiff-appellee by the fraud, undue influence and misrepresentations of the defendants-appellants. Grounds numbers one and two in the motion for new trial as urged by the appellants are that the decision of the court is not sustained by sufficient evidence and that the decision of the court is contrary to law, and we will consider both of these grounds jointly. In support of these grounds of error, the appellants have argued that appellee has not shown any evidence that there was any undue influence, misrepresentation, or fraud. In the light of this contention, we are asked and find it necessary to review the evidence presented in this cause, and in view of the long-standing rule of this court, in considering the evidence we will herein consider only that evidence most favorable to the appellee.

The facts disclose that Frederick C. Dries, appellee

herein, was an old man, aged about 76 years on July 25, 1952, who lived alone, except for a roomer, in one side of an old brick double house, and rented the other side to a tenant for $30.00 a month. Nine years before, his wife, Lyda E. Dries, had died. Within three-quarters of a block, on the same street, lived his friends, Mr. and Mrs. Charles C. Burgin, appellants herein. Burgin had known Dries for over 37 years, and had visited in his house three or four times a month.

At that time, Dries had a bank account with a balance of $6,060.00, cash in two envelopes amounting to $342.00, and an old automobile. He also was drawing Social Security benefits of $49.50 a month.

At about 10:55 P. M. on July 25, 1952, a neighbor woman knocked on the door of appellant, Burgin, and informed him that Dries had fallen and hurt himself. Burgin, who had retired, got up from bed, dressed and went over to the house of Dries where he found him with a broken hip. He called an ambulance and had Dries taken to a hospital, staying with him until all arrangements for his care had been made and returning to his own home about 4:00 A. M.

Dries was in the hospital for about six weeks and then, at his request, Burgin took him to the Burgins' home. There the appellants kept him for about seven months, without charge, giving him room and board, and some nursing care. Mrs. Burgin quit her employment at a restaurant. At the end of about seven months, the Burgins asked Dries to find accommodations elsewhere. He asked to stay and offered to convey his house to them.

On March 5, 1953, Dries conveyed the real estate to both Burgins by warranty deed and later gave Burgin the money in his bank account and his cash "in trust" as testified to by appellee Dries. He sold his automobile

for $325.00, and Burgin got this money. An insurance policy which Dries had on the life of his brother-in-law was cashed and the proceeds used to erect a marker at Dries' prospective grave beside that of his deceased wife. As his Social Security checks were received, Dries promptly endorsed them and turned them over to the Burgins.

Dries continued to live with the Burgins at their home for over a year longer, during which time appellant Burgin, who was a carpenter by trade, carried on the repair and improvement of the Dries' house, which was now owned by the Burgins. Dries testified that he did not ask Burgin to make any repairs. Burgin expended all the money he had received from Dries for materials and, although his health had previously permitted him to work only two to four days a week at his general contracting business, he spent from 40 to 50 hours a week on the repair of the former Dries' house for a period of approximately two years, performing nearly all the labor himself.

At the end of a year, Burgin had the north side of the house ready for occupancy and the Burgins and Dries moved in, the Burgins continuing to give Dries his room, board, clothing, and other living comforts. For another year, Burgin labored on the south side of the double house to get it ready to rent.

Dries, who had now lived with the Burgins over two years and a half, demanded that the house be reconveyed to him and the return of all the money he had given the Burgins. Upon being refused, Dries filed two suits in the Superior Court of Marion County, one (Cause No. C-14,728) to set aside his deed to the Burgins, claiming that it had been obtained by fraud and undue importunity and persuasion, and the other (Cause No. C-14,733) demanding an accounting of all

funds alleged to have been given to the Burgins, claiming that they had been given to the Burgins in trust for Dries and that the Burgins had embezzled them and converted them to their own use.

Dries continued to live with the Burgins and receive the usual care from them during the pendency of these actions and the trial and was still with them when the court rendered its judgments. He did at one time offer to leave if the Burgins would "get me my money."

In reference to the evidence as to the signing of the deed, the following appears in the record of questioning of Dries by attorney for appellants, being the attorney who prepared the deed:

"Q. Now, at the time this deed was signed, did you know what you were signing?
A. Yes, he said it was a deed for the property.
Q. I explained to you that it was a deed for your property?
A. Yes.
Q. And explained that Mr. Burgin would become the owner of your property, is that correct?
A. I signed the deed, the property was given.
Q. That was explained to you, was it not?
A. No, no.
Q. You say it was not explained to you?
A. All that was said that night, it was signed in the car and I signed it and that is all that was said.
Q. I'll ask you if it wasn't a fact that Mr. Burgin helped you into the house and you signed the deed in my living room?
A. No, sir, I signed the deed in the car. I stand on the rock of truth secure."

There was some conflicting evidence concerning the value of the house of appellee at the time it was deeded to the appellants, and of the value of the property after

it had been repaired by appellant Burgin—however, considering the evidence most favorable to appellee, the house was worth approximately $10,000.00 before it was repaired and at the time of the conveyance, was worth no more than $10,000.00 after appellant Burgin had repaired the property, owing to the age and location of the house and its rental value as established by expert real estate witnesses.

The facts also showed that the attorney for appellants drafted the deed of conveyance on which the following words were recited:

"This conveyance is made and the grantees by their acceptance of this instrument accept the same as payment in full of the balance due said grantees from the grantor for moneys expended by them for the benefit of the grantor and his said wife and for care given and services rendered by said grantees to said grantor and said wife. As further consideration for this conveyance the grantees personally covenant and agree that, upon the death of the grantor, they will expend an amount not to exceed one thousand dollars ($1,000.00) in payment of the funeral expenses of said grantor and expend an amount not exceeding three hundred dollars ($300.00) toward the erection of a suitable marker for said grantor's grave. Said grantees so agree to expend as nearly said amounts as shall be practicable."

While the consideration materially speaks of care given to appellee (grantor) and his wife, there was no covenant in the deed itself which binds the appellants in any respect as to care, support and maintenance, of grantor in the future. At no time did the appellee have any private conversation with the attorney who drafted the deed. In fact, the evidence favorable to appellee, showed that the deed was signed in appellants' car and in the dark. And further, that the property was turned over to appellants "in trust."

It has been held that where the parties do not occupy substantially the same position, the one occupying the superior position must act in good faith and give the other all material information and take no undue advantage of him. 14 I. L. E., §23, p. 183, and cases cited.

In this case at bar, from the evidence, it can be presumed that the appellants were in the superior position, that they occupied with their attorney the relationship of client and attorney, and that it was their burden to supply all material information to appellee, which the facts show was not done.

When one looks at the pattern of events as they transpired from August, 1952, to March, 1953, appearing in evidence, it might be presumed that overpowering influence was being exercised upon the appellee by the Burgins. Appellee reposed trust and confidence in the Burgins, and by reason of the weakened and helpless condition of the appellee, it can be presumed, they were able to influence him to turn over his life savings as well as his property, as well as all incomes, and they represented to him that his money was in a lock box at the bank. The attorney for the Burgins drew up the deed purely at the instance of the Burgins, and at no time did the appellee have any private conversation with the attorney. The evidence thus presents a clear case of presumptive fraud, or in other words, from the situation of the parties and the nature of the transaction, fraud could be presumed.

The burden rested upon the appellants to free themselves from the presumption by clear and unequivocal proof. *Wells* v. *Wells* (1925), 197 Ind. 236, 243, 150 N. E. 361. This they failed to do.

The rule is well settled in this state that if a person was of sound mind when that person made a deed, that

person would have a right to convey land for any lawful consideration or as a gift. *Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997; *Batman* v. *Snoddy* (1892), 132 Ind. 480, 32 N. E. 327. Mere improvidence alone is not enough to compel a setting aside of a conveyance, nor is lack of consideration alone sufficient cause for setting aside a deed. *Deckard* v. *Kleindorfer, supra; Aldrich* v. *Amiss* (1912), 178 Ind. 303, 99 N. E. 419. Neither is a combination of age, improvidence and lack of consideration sufficient grounds for relief in equity. There must also be present some wrongful act on the part of the grantee, such as fraud, or undue influence, to warrant the setting aside of such conveyance. *Deckard* v. *Kleindorfer, supra.*

If there is any evidence of probative value in the record to sustain the charges of fraud, undue influence or misrepresentation, then the decision of the court below is correct, and this court can not reverse because it may believe the weight of the evidence preponderates toward the appellants. It is well established that this court can not weigh the evidence.

We believe that there is much in the case of *Deckard* v. *Kleindorfer, supra,* which is apropos to the case at bar:

> "Contracts by which aged or infirm persons convey all or a substantial part of their property to others in consideration of an agreement for support, maintenance and care during their declining years, are with practical uniformity recognized by the courts as constituting a class by themselves in matters pertaining to their interpretation and enforcement. 'There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no

court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for.' " *Huffman* v. *Rickets* (1916), 60 Ind. App. 526, 532, 111 N. E. 322; *Lowman* v. *Lowman* (1938), 105 Ind. App. 102, 113, 12 N. E. 2d 961.

The case of *Deckard* v. *Kleindorfer, supra,* quotes with approval *Ewing* v. *Wilson* (1892), 132 Ind. 223, 234, 31 N. E. 64, 19 L. R. A. 767, which states that it is the duty of the solicitor who prepares such a deed to place with it an express power of revocation. In the case at bar, this was not done. Nor can this deed be classed as a trust deed by and of itself. It is true that there may have been a contemporaneous oral contract for support and maintenance of the grantee, which was not expressed in the deed, but certainly such an oral agreement had no binding effect upon the appellants, and even after they had obtained everything grantor had, then they threatened him with going to the poor house. And indeed, after pauperizing him by taking his property, both real and personal, appellee was a fit subject for the poor house.

Appellants insist there is not a scintilla of evidence as to undue influence, fraud or misrepresentation, and that none can be inferred. With this we cannot agree.

"We recognize the rule that the trial court in cases of this character sits as a court of equity 'and if it can discover that any acts, or stratagems, or any undue means have been used to procure such gifts; if it can see the least speck of imposition, or that the donor is in such situation in respect to the defendant as may naturally give him an undue influence over him; if, in a word, there be the least scintilla of fraud, a court

of equity will interfere.' " *Deckard* v. *Kleindorfer, supra; Sherrin* v. *Flinn* (1900), 155 Ind. 422, 427, 58 N. E. 549.

Undue influence generally occurs when one of the parties is weak in intellect or is so situated or related to the other party as to be under his influence. What the relation may be is not material, if confidence is reposed and influence is obtained. When one of the parties is old and feeble, illiterate and weak-minded from sickness, or other cause, very slight circumstances will cast the burden on the other party. *Yount* v. *Yount* (1896), 144 Ind. 133, 139, 43 N. E. 136 and cases cited.

"Equity requires that those who deal with the helpless shall not take advantage of their greater abilities or impose upon confidence reposed, and if there is the slightest proof of fraud will intervene." *Sachs* v. *Blewett* (1933), 206 Ind. 151, 157, 185 N. E. 856.

From the evidence, the court could very properly have inferred that the appellee was unduly influenced to transfer his real estate to appellants because of his fear that in his weakened and aged condition, without near relatives, he would be faced with being moved back to his own house where he would be without anyone to look after him in his declining years, alone, sick, frightened, friendless, and helpless in event that he should again fall and break any of his aged and brittle bones. Loneliness, to an aged person such as appellee without family or close friends, in itself could have such a bearing upon his mind that he could be easily persuaded to seek solace in the companionship of any neighbor who might have befriended him by prior actions.

The exercise of undue influence may be shown by cir-

cumstantial evidence. *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 90 N. E. 766. The ultimate inference of undue influence, or its absence, is one of fact to be determined by the trial court. The issue of undue influence must be determined from all the facts and circumstances given in the evidence. The trial judge in this case at bar had the opportunity to see and study the witnesses while they were testifying, to judge the truthfulness and honesty of the witnesses, their candor and appearance in the trial, and in his judgment, as a matter of fact, he found that the deed had been obtained by the fraud, undue influence and misrepresentations of appellants.

Having carefully considered all of the evidence, we are of the opinion that there was sufficient evidence by which the court below could have inferred presumptive fraud and undue influence, and we are of the opinion that such finding in Cause No. 14728 by the court, based upon the evidence, was not contrary to law.

Grounds numbers 3, 6, 7 and 8 in appellants' motion for new trial alleged error of law occurring at the trial, primarily dealing with the sustaining of objections of appellee to either parts of answers or to questions asked of witnesses called on behalf of the appellants. Ground number 4 claimed error of law in sustaining an objection by appellee to a hypothetical question propounded by appellants during cross-examination of an expert witness called on behalf of the appellee by which question appellants attempted to establish the value of the property before improvements were made by the appellants. Ground number 5 was an alleged error of law of the court in sustaining objection of appellee to a question propounded by appellants on cross-examination of a witness of appellee. The remaining grounds, num-

bers 9 and 10, have been waived by failure of the appellants to argue them in the argument portion of their brief.

We have carefully considered each of these grounds for alleged errors of law occurring at the trial, and we are of the opinion that appellants have not affirmatively shown by either application of principles of law or citation of pertinent legal authorities any sufficient legal justification for this court to reverse on technicalities. On an appeal the burden of being an advocate for appellants is not to be cast upon this court—we must assume that a case was fairly tried and a just result obtained, unless appellants are able to convince us otherwise. For this court to assume the task of researching the law on every technicality proposed by appellants as alleged errors occurring in the trial of cases in the courts below would make practically impossible the task of this court in reviewing the large number of cases now pending before it.

In Cause No. 14733, there was a finding and judgment that appellee recover of appellants the sum of $5,437.20 and costs. The theory of appellee's complaint being embezzlement by appellants of funds of appellee.

Because of the conclusion reached by this court, it is only necessary for us to consider the first three grounds of the appellants in their motion for new trial, the overruling of which was assigned as the only error in appellants' assignment of errors:

1. Error in the assessment of the amount of plaintiff's recovery herein in that the same is too large.

2. The decision of the court is not sustained by sufficient evidence.

3. The decision of the court is contrary to law.

Considering the evidence most favorable to appellee, we find that the only sums of money claimed by appellee concerning which there is any evidence that appellants either took or received said money are the following items:

| | |
|---|---:|
| Money in bank account | $6,060.00 |
| Cash in two envelopes | 342.00 |
| Proceeds of sale of automobile | 325.00 |
| Proceeds of insurance on life of Charles Layton | 196.00 |
| Sale of coal | 25.00 |
| Refund from Power & Light Co. | 6.00 |
| Sale of bath tub | 20.00 |
| Social Security checks | 1,301.50 |
| Rents collected | 270.00 |
| Total | $8,545.50 |

Appellee's testimony concerning other sums claimed from appellants was stricken by the court when appellee admitted in answer to preliminary questions that he had not seen appellants' possession of the money.

The evidence showed that all of this money excepting $161.80 was used by appellants for improvements to the home that was awarded back to the appellee by this court in the judgment in Cause No. 14733. The evidence was uncontradicted that appellants spent $161.80 of the money received for the Charles Layton insurance policy for a marker for appellee's grave.

From all of the evidence, therefore, it can be shown that, if we can overlook the fact that all of the above money, totalling $8,545.50 (less $161.80 used for the marker, or $8,383.70), was used by appellants for improvements to the house which was returned to appellee by this court in the above Cause No. 14728 and for a marker for appellee's grave, and charge appellants with using said funds with no color of right or authority, judgment for appellee on his complaint should have

been for the sum of $8,383.70 plus costs. However, the uncontradicted evidence in support of the cross-complaint filed herein by appellants showed that the lodging, board, and nursing care appellee received from appellants was of the reasonable value of $50.00 per week, which under the evidence would have entitled appellants to a claim of $9,950.00. The appellee did not deny this in his pleading and offered no evidence to deny it or of any other value. Thus, appellants, under the only evidence presented on the subject were entitled to credit for $9,950.00 on this item of their counterclaim.

Although the evidence is uncontradicted that appellant Burgin worked on the improvements and remodelling of the house, and that his labor bill, computed at $2.50 per hour, would have amounted to $8,742.00, and appellant Burgin expended $8,081.00 for materials on the house, and $700.00 for property taxes, or a total of $17,523.00, which he claimed on his counterclaim, there was disputed evidence concerning whether or not the improvements made to the house increased the actual market value of the property from the time that appellee Dries conveyed the house to appellants and the time of the trial of this action. Considering only the evidence most favorable to appellee, it is apparent that because of the age and other conditions existing, the reasonable market value of the property before the improvements and after improvements were made remained approximately the same. Therefore, we must conclude that the trial judge below weighed this evidence and concluded that appellants were not entitled to receive any credit for either labor or materials used on the property, especially in view of the fact that although appellee Dries apparently by his actions acquiesced in the improvement of the property, yet there

was no evidence that appellee Dries ever actually consented to the use of his money by appellants for improvements to the house.

Resolving, therefore, all inferences and conclusions that may have been drawn in favor of appellee, on the evidence, we can not see how the trial judge below could have arrived at the figure of $5,437.20 which he awarded to appellee, since the evidence, undisputed, indicated that appellants were entitled to some compensation for services rendered.

Based upon the equitable principles involved under the issues, and being mindful of the old adage, "You can't have your cake and eat it too," we feel that to allow this judgment to stand against the appellants, and to also allow the judgment in the first referred to Cause No. 14728 giving the property back to appellee, would not only be unconscionable, but would in fact be contrary to law.

We conclude, therefore, that the judgment in this cause is not sustained by sufficient evidence, is excessive, and is consequently contrary to law. Because of this conclusion, we do not deem it necessary to further consider the other grounds of error urged by appellants.

Judgment, therefore, as to Cause No. 14728 is affirmed, and judgment in Cause No. 14733 is reversed and this cause is remanded with instructions for further proceedings not inconsistent with the opinion of this court.

Myers, C. J., Cooper and Ryan, JJ., concur.

NOTE.—Reported in 163 N. E. 2d 609.