WADLER *v.* MOGUL RUBBER CORPORATION ET AL.

[No. 17,367. Filed June 12, 1945. Rehearing Denied September 21, 1945. Transfer Denied October 19, 1945.]

*Guy W. Dausman,* of Goshen, for appellant.

*Mehl & Mehl* and *Harry E. Vernon,* all of Goshen, for appellees.

DRAPER, J.—Atlantic India Rubber Works, Inc., hereinafter called Atlantic, is a sales organization for rubber goods. In 1936, it acquired a majority of the stock of appellee Mogul Rubber Corporation, hereinafter called Mogul, which latter is a rubber goods manufacturing concern, the purchase having been made by Atlantic to acquire a manufacturing unit. Atlantic later sold its Mogul stock to some of its own stockholders. The appellant acquired some but the appellees Moore and Moore, husband and wife, acquired the controlling interest and they together now own about 80 percent of Atlantic and 68 percent of Mogul. The appellant owns 11 percent of Atlantic and 22 percent of Mogul. In 1940 the appellant formed and is now interested in a competitive organization for the sale of rubber goods.

In this action, brought by appellant in August, 1944, Mogul and all of its stockholders except appellant are named as parties defendant. By it the appellant seeks to compel Moore and Moore to account to Mogul for profits alleged to have been diverted by them, and further seeks the appointment of a Receiver to take over the business, to maintain an action for an accounting and for damages against Moore and Moore, and to sell Mogul's assets and distribute the net proceeds of the sale to those entitled thereto according to their respective holdings.

The trial court found for all defendants. Appellant

assigns error in the overruling of his motion for new trial which specifies that (1) the decision of the court is not sustained by sufficient evidence and (2) it is contrary to law.

Although the first specification in appellant's motion for new trial presents no question, since a negative decision may not be attacked upon the ground that there is a lack of evidence to sustain it, *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. (2d) 905; *McKee* v. *Mut. Life Ins. Co. of N. Y.* (1943), 222 Ind. 10, 51 N. E. (2d) 474; *Department of Insurance, etc.* v. *Indiana Trav. Assur. Co.* (1945), 115 Ind. App. 285, 58 N. E. (2d) 761, the appellant may properly assert under the second, that by the decision of the trial court he was denied the relief to which the evidence entitled him. *Wilson, Admx.* v. *Rollings, supra.*

The appellant's principal contention is that a receiver should be appointed because the evidence shows that Atlantic, under the management of the appellee Charles O. Moore, who is the president of both corporations, has deprived Mogul of all of its customers other than Atlantic; that it compels Mogul to furnish some of its products to Atlantic at a loss to Mogul and without regard to Mogul's cost of production; that Alantic compels Mogul to fill orders so small that a loss is necessarily incurred in filling them and that Atlantic demands priority of deliveries without system or schedule. To sustain his position, the appellant relies strongly on the case of *Tri-City Electric Service Co.* v. *Jarvis* (1934), 206 Ind. 5, 185 N. E. 136. In the view we take of the case, it is unnecessary to decide whether the situation alleged by appellant to exist would, if proven, justify or require the appointment of a receiver in this case.

The evidence is voluminous. It discloses that Charles

O. Moore and his wife are two of Mogul's three directors, and so are in a position to elect its officers and direct its policies. Mogul is a solvent, going concern, with greater assets and in a better financial position than ever before. Under its present management it has consistently made money, has enlarged and paid for the enlargement of its plant facilities, and has greatly increased its volume of business. The book value of its stock has increased from $26.06 per share in 1939 to $68.92 per share in 1944. No dividends have been paid since 1939 and the appellant does not by this action seek to compel the payment of any.

From the beginning, Atlantic has taken practically everything produced by Mogul, which never had an advertising or sales department, and now takes all of Mogul's products. A controversy has always existed between the two corporations with regard to a proper method for computing Mogul's costs and profits, and no satisfactory arrangement has ever been worked out. The evidence further discloses that Atlantic has sometimes paid Mogul a price for certain articles lower than Mogul's cost of producing those articles as computed by Mogul; that on numerous occasions Atlantic has paid Mogul prices in excess of the amounts asked by Mogul, and frequently Mogul has not set a price on its products, but has left the pricing thereof to Atlantic, largely because Atlantic, with its larger office force, was better able to work out cost and ceiling prices.

There is evidence of orders so small that Mogul could not fill them at a profit, and of many occasions on which Atlantic demanded deliveries out of order and not according to any fixed plan or schedule, thus necessitating machine set up changes with consequent increased production costs. There is also evidence that such small orders and frequent changes in priority of deliveries

were necessary and unavoidable under wartime conditions.

There is evidence to the effect that neither the management, operation or policy of Mogul is to any substantial degree different than it was when appellant was actively associated with Atlantic, and further, that although Mogul now disposes of its entire production to Atlantic, such is good business and prudent management under wartime conditions. Although it is undisputed that Mogul's prices were sometimes adjusted or fixed by Atlantic, there is much evidence that such prices were neither arbitrary nor fixed to deprive Mogul of a profit, but were to keep Mogul's prices in line with actual costs, wage controls, ceiling prices and occasional renegotiations. An $89,000 profit, the greatest ever made by Mogul in any one year, was made in 1941 after the appellant left Atlantic, but before the advent of price and profit controls. The net operating profit for the first quarter of 1944 is shown to have been $10,638.02 whereas the net operating profit for the second quarter fell to $466, and the appellant sought to prove this was the result of manipulation on the part of appellee Charles O. Moore, but there is much evidence to the effect that he was in no way responsible for that condition. We find no evidence which would compel a finding that Atlantic or any of the appellees have been unjustly enriched at the expense of Mogul, or that its funds have been improperly diverted to others.

Thus, the case seems to present only disputed questions of fact which, under the evidence, could have been and were resolved against the appellant, and we are not at liberty to interfere.

The decision is not contrary to law, and the judgment is therefore affirmed.

NOTE.—Reported in 61 N. E. (2d) 472.