SCHRENKER, EXECUTOR OF ESTATE OF PONTZIOUS, DECEASED *v.* GRIMSHAW, ET AL.

[No. 18,466.   Filed May 17, 1954.]

494

*Paul E. Schrenker, John D. Staggenburg,* of Anderson, and *George Milford,* of Marion, for appellant.

*Campbell, Gemmill, Browne, Ewer & Torrance,* of Marion, for appellee.

CRUMPACKER, C. J.—This suit was commenced by Olive Pontzious who died before trial and the appellant, as her personal representative, was substituted in her stead. It has for its purpose the cancellation of the following instrument duly entered in the deed records of Delaware County, Indiana:

"THIS INDENTURE WITNESSETH, that Olive Pontzious, sole and unmarried of Delaware County, in the State of Indiana convey and warrant to Edith V. Grimshaw, sole and unmarried of Grant County, in the State of Indiana, for and in

consideration of love, affection and services formerly rendered the receipt whereof is hereby acknowledged, the following described real estate in Delaware County, in the State of Indiana, to-wit:

Forty-three and one-half (43½) feet of equal width off of the entire South end of Lot Number four (4) in Block number six (6) in addition to Muncietown, now City of Muncie.

The Grantor herein holds and maintains in herself a life estate in the above described real estate and this conveyance in fee simple is made subject to the life estate held by the Grantor herein.

IN WITNESS WHEREOF, The said Olive Pontzious sole and unmarried has hereunto set her hand and seal this 21st day of October, 1949.

(SEAL)   Olive Pontzious   (SEAL)"

(Here follows notary's jurat)

On March 3, 1950, Olive Pontzious disaffirmed said deed by formal notice to the grantee, Edith Grimshaw, in which she demanded a reconveyance of the real estate involved to her. As such reconveyance was not forthcoming she sought relief in equity by a complaint in two paragraphs in the first of which she charges that she executed said deed in consideration of a collateral oral contract between herself and the grantee, Edith Grimshaw, whereby said Grimshaw agreed to nurse her, support and comfort her, be her companion and, in general, take care of her for the remainder of her life and pay her funeral expenses upon her death. She further charges a breach of such contract by Grimshaw in many particulars and asks that said deed be set aside and held for nought. The second paragraph of complaint proceeds upon the theory that she executed said deed because of undue influence exercised over her by the grantee, Grimshaw, and prays the same relief.

It appears that after Olive Pontzious commenced this suit she made a will in which the real estate here involved was devised to the appellee Lavon Hiatt and after Olive Pontzious died the appellant filed an amended complaint naming said Hiatt as a party defendant to answer to her interests and alleging the insolvency of the Pontzious estate and the necessity of using the real estate here involved to make assets to pay debts. Otherwise the material allegations of the amended complaint are the same as those set out in the original complaint filed by Olive Pontzious. The record discloses no appearance or answer by the defendant Hiatt nor was she defaulted for any reason. The defendant Grimshaw joined issue by an answer agreeable to Rule 1-3 and, on change of venue, the case was tried to the Grant Superior Court and resulted in a finding and judgment for the appellee Grimshaw from which the executor Schrenker appeals.

We are asked to reverse because the appellant considers that the court erred in overruling his motion for a new trial which sets out four specifications which, because of necessary comment, we quote verbatim: "(1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law; (3) the court erred in sustaining all objections to the questions asked in the introduction of the evidence of the decedent, Olive Pontzious, by virtue of her deposition; (4) the court committed the following irregularity, to-wit: by announcing in open court that the funeral bills, while not a legal obligation of the defendant Grimshaw, in view of his finding for her, became her moral obligation, and he expected her to pay the funeral bills of the decedent Olive Pontzious or he would sustain a motion for a new trial."

The decision of the court being negative as to the appellant, upon whom the burden of establishing his

case rested, specification (1) presents no question. *Cart* v. *Fleming* (1950), 119 Ind. App. 690, 88 N. E. 2d 577; *Wadler* v. *Mogul Rubber Corporation* (1945), 116 Ind. App. 152, 61 N. E. 2d 472.

Specification (3) shows none of the questions asked and the objections thereto. We have repeatedly held where error is predicated on the exclusion of evidence the motion for a new trial must specifically set out the question propounded, the objections made, and the court's ruling thereon or otherwise no question for review is presented. *Rogers Cartage Co.* v. *Peglow* (1952), 122 Ind. App. 481, 106 N. E. 2d 235; *Bulen* v. *Pendleton Banking Co.* (1948), 118 Ind. App. 217, 78 N. E. 2d 449. Furthermore, in the appellant's condensed recital of the evidence the substance of Olive Pontzious' deposition is narrated in full so we assume that the court, for some reason undisclosed by the record, admitted said deposition in evidence notwithstanding its alleged ruling to the contrary.

The matter complained of in specification (4) is not a part of the record unless brought in by special bill and we find none, but even if such matter were properly before us, it is apparent that it is nothing of which the appellant can complain. It is certainly no concern of the appellant that an obligation was imposed upon the appellee Grimshaw which the court considered she had no legal nor equitable duty to perform. Any error involved in the incident harmed no one but the appellee Grimshaw and she is not complaining.

So, in final analysis, we are left with but one question to decide: Is the decision of the court contrary to law? In this connection the appellant contends that the undisputed evidence entitles him, as a matter of law, to the relief he sought but which the court denied him. He bases this contention on the following principle of

law announced in *Lindsay* v. *Glass* (1889), 119 Ind. 301, 21 N. E. 897: When one who is laboring under the infirmity and decrepitude of old age, disposes of his property on the promise of another to support and take care of him for the remainder of his life, the courts are inclined to treat the conveyance, so long as the contract for support remains executory, as having been made upon the condition subsequent that the promise to furnish care and maintenance shall be fully and fairly performed. Until the contract is fully performed on both sides, it is liable to be rescinded and the property reclaimed, leaving the parties to the remedies, respectively, for what may have been furnished under the contract.

It is true that when the deed in controversy was executed Olive Pontzious was 83 years old. She had suffered one or two slight strokes and was physically weak and infirm. Four months later she disaffirmed said deed and demanded her property back. The contract for support and maintenance, upon which the appellant relies as a condition subsequent entitling his decedent to rescind at any time before full performance, was not incorporated in the deed nor is it evidenced by any other written instrument. The court evidently found that the parties made no such contract and that the deed was executed for the consideration therein stated, viz: past services, love and affection. In other words, the deed was purely voluntary and not given in consideration of any promise or payment of money or anything of monetary value. The evidence most favorable to the court's finding may be summarized as follows: Olive Pontzious had known Edith Grimshaw for 50 years or more during all of which time they had been close friends. Mrs. Grimshaw was a niece of Mrs. Pontzious' former husband and as she was childless she lavished considerable

affection on Mrs. Grimshaw both as a child and adult. Mrs. Grimshaw visited her frequently while she lived in Marion and as often as once a week after she moved to Muncie. On these visits Mrs. Grimshaw often brought food and performed small services calculated to make Mrs. Pontzious more comfortable and her life more pleasant. A few hours before the deed in question was executed Mrs. Pontzious told the appellee Grimshaw that she had made up her mind to arrange things so that she, said appellee, would have her real estate when she was gone and at that time the appellee Grimshaw told her that she was in no financial position to support her. Mrs. Pontzious replied that all she wanted "was help out on the grub" and if she got that she would have enough rent money to get along. This seems to us to be sufficient to warrant a finding of no contract for support.

This brings us to a consideration of the appellant's contention that the undisputed evidence, aided by legal presumption, forces the conclusion that said deed was executed through the undue influence of the appellee Grimshaw. It is no longer subject to controversy in this state that "where a contract has been procured from one who is in a situation of distress and necessity by another who stands in a relation of confidence, or who is in a situation of advantage over such person, the burden is on him who procures the benefits of such a contract to show among other things that it was made in the exercise of the free and voluntary choice of the other." *Ikerd* v. *Beavers* (1886), 106 Ind. 483, 7 N. E. 326. See also *Yount* v. *Yount* (1896), 144 Ind. 133, 43 N. E. 136; *Wells* v. *Wells* (1926), 197 Ind. 236, 150 N. E. 361.

We think the above principle of law governs this case. Olive Pontzious was aged, infirm and distressed when she made the deed in controversy. She reposed

great confidence in the appellee Grimshaw to whom she deeded her property subject to a life estate reserved for her own benefit and the evidence discloses no valid consideration for such deed other than love and affection. These facts, being undisputed, made it necessary for the appellee Grimshaw to go forward with evidence establishing the fact that said deed was made in the exercise of Mrs. Pontzious' free and voluntary choice. The court found that the deed was so executed and the only question before us is whether the undisputed evidence forces a contrary conclusion.

It should be borne in mind that Mrs. Pontzious' mental capacity to make the deed in controversy is not questioned. She gave away nothing by reason thereof except the use and control of the bare fee in the property involved. On at least one occasion she told the appellee Grimshaw she wanted her to have her property when she was gone whereupon Mrs. Grimshaw replied that she, Mrs. Pontzious, had relatives and her church to consider before making such an arrangement. Sometime in the late summer or early fall of 1949 Mrs. Pontzious suffered a slight stroke and was more or less bedridden for a time. On learning of her illness Mrs. Grimshaw drove from her home in Marion to Muncie on the morning of October 21, 1949, to see Mrs. Pontzious and to render such help as she could in the circumstances. While she was there Mrs. Pontzious suggested that her lawyer, one Victor Bruell, be called as she thought the time had come for her to fix things so that Mrs. Grimshaw would have her property when she was through with it. While Mrs. Grimshaw was attempting to locate Bruell by telephone he came to Mrs. Pontzious' apartment of his own volition to talk over other business he was undertaking to do for her. They conferred privately and Bruell explained deeds, wills, and life estates to Mrs. Pontzious

and told her that if she conveyed the property to Mrs. Grimshaw reserving a life estate therein, she would not be able to sell or mortgage it in the future if she so desired. Mrs. Pontzious decided however that she wanted to handle the matter in that manner and Bruell left for his office to prepare the deed. Mrs. Grimshaw took no part whatever in this discussion and had gone home when, later that day, Bruell brought the deed to Mrs. Pontzious for her signature. She read it and asked why she was described as unmarried when in truth she had had a husband. When this was explained to her she signed the deed and Bruell, a notary public, affixed his jurat and took it to the recorder's office in Delaware County where it was duly recorded. The above is, of course, a summary of the evidence most favorable to the court's decision and certainly supports the conclusion that the deed in dispute was Mrs. Pontzious' free will and choice.

While this is a case requiring the closest scrutiny we are, nevertheless, forbidden the privilege of determining on which side lies the preponderance of the evidence. As was said in *Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997, "Neither is a combination of age, improvidence and lack of consideration sufficient grounds for relief in equity. There must also be present some wrongful act on the part of the grantee, such as fraud or undue influence to warrant the setting aside of such conveyance." The court found none in this case and we cannot say the undisputed evidence compels a contrary conclusion.

The appellee Hiatt has not seen fit to favor us with a brief but it is apparent that her position on the question presented by this appeal is identical with that of the appellant and a discussion of her case is unnecessary.

Judgment affirmed.

Achor, J., not participating.

NOTE.—Reported in 119 N. E. 2d 432.