IN THE MATTER OF THE GUARDIANSHIP OF WILLIAM SHERMAN
FOWLER; ELEANOR STANNARD *v.* ALFRIDA FOWLER

[No. 2-676A211. Filed January 31, 1978. Rehearing denied March 2, 1978.
Transfer denied May 11, 1978.]

*Kim A. Rogers, Kiley, Osborn, Kiley, Harker & Rogers*, of Marion, for appellant.

*David H. Williams, Noel, Noel & Williams*, of Kokomo, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

Respondent-appellant, Eleanor Stannard (Eleanor), perfects this appeal following the judgment of the trial court which awarded $11,965.82 to petitioner-appellee, Alfrida Fowler (Alfrida).

## FACTS

The facts necessary for our disposition of this appeal are as follows: On July 12, 1973, guardianship letters were issued to Alfrida as the guardian of both the person and property of her husband — Sherman Fowler (Sherman). Eleanor was Sherman's daughter by a previous marriage. On August 15, 1973, Byron Fowler, Sherman's brother, deposited $11,965.82 with the Clerk of the Howard County Superior Court. On May 9, 1975, Alfrida filed a petition which sought to have the $11,965.82 released from the clerk's custody and distributed to her in her capacity as guardian, or, in her capacity as spouse of Sherman. Thereafter, on October 13, 1975, Eleanor filed an answer to Alfrida's petition alleging that she was the rightful owner of the $11,965.82 being the donee of an *inter-vivos* gift of the money from her father — Sherman.

On December 5, 1975, the trial court made findings of fact and conclusions of law the pertinent parts of which provided as follows:

"* * *

The court concludes that the evidence fails to show a valid and completed gift of the funds in question to Eleanor Stannard.

There was no delivery. The evidence shows that the funds were entrusted by William Fowler to Byron Fowler with the intention to make a gift at some time in the future, when the two of them could go together to give the money to Eleanor Stannard. However, this was never done.

William Fowler did not have sufficient mental capacity to make a valid gift either in November of 1972 or in January of 1973. The evidence shows that William Fowler was paranoid and delusional, and particularly so on the subjects of his wife and his money.

William Fowler had no legal right to give away funds which were the joint property of he and his wife. The evidence is clear that the money attempted to be given to Eleanor Stannard was the proceeds from sale of corn and soybeans from the farm which they owned jointly. And that his expressed intent was to keep his wife from getting any of the money.

IT IS THEREFORE ORDERED BY THE COURT that the Clerk of this court be and he hereby is authorized and directed

to pay over to Alfrida Fowler, as guardian of the estate of William Sherman Fowler, the $11,965.82 paid into the Clerk's office by Byron Fowler together with any interest accrued thereon, to be accounted for by said Alfrida Fowler as guardianship funds.

* * *"

## ISSUES

1. Whether Sherman had sufficient mental capacity to make an *inter-vivos* gift to his daughter on November 13, 1972 or January 18, 1973.

2. Whether the purported gift was invalid because the gift corpus was not delivered.

3. Whether Sherman had a sufficient ownership interest in the property to make a gift thereof.

## DECISION

*Issue One*

The leading case in Indiana dealing with the mental capacity required to make a valid *inter-vivos* gift is *Teegarden v. Lewis* (1895), 145 Ind. 98, 40 N.E. 1047. Therein, at p. 101 it was said:

". . . With deference to the authorities cited, it is our judgment that the capacity to execute a will is the perfect requisite for the execution of a gift *inter vivos.*

* * *

Testamentary capacity is determined upon the inquiry: Did the testator possess sufficient strength of mind and memory to know the extent and value of his property, the number and names of those who were the natural objects of his bounty, their deserts with reference to their conduct and treatment towards him, their capacity and necessity, and did he have sufficient active memory to retain all these facts in mind long enough to have his will prepared and executed? . . ." (Citations omitted) (Original emphasis)

The record when viewed most favorably to Alfrida discloses the testimony of John A. Bowman, a psychiatric expert, in pertinent part to be as follows:

"\* \* \*

**Q.** Have you had a patient by the name of William Sherman Fowler?

**A.** Yes, I did.

**Q.** And when was he a patient?

\* \* \*

**A.** Yes. He entered the hospital the 19th of January, 1973. He entered the Regional Mental Health Center that is that date.

\* \* \*

**Q.** Did you have occasion to treat Mr. Fowler while he was in the hospital?

**A.** I had him under my treatment approximately three weeks.

**Q.** What kind of medical problems did he have?

**A.** He had a complex medical problem. He had what I would consider to be an organic psychosis, that is a major mental illness due to physical problems, and it could even be complicated by a functional mental illness as well. And I thought he was delusional and paranoid at the time we treated him.

**Q.** From the nature of his condition then and your question just now of the kind of illness, do you have any knowledge about whether or not he would have been suffering from the same condition as early as the previous November?

**A.** Yes, most likely he was.

**Q.** *Was there any focus for his paranoid?*

**A.** *Yes, he was paranoid about his wife in my opinion.*

**Q.** *And what leads you to that conclusion?*

**A.** *Well, Mr. Fowler, repeatedly emphasized that his wife was having affairs with other men, had run off with another man and he was going to get her in any way he could. . . .*

\* \* \*

**Q.** Now, if a person were shown to be having difficulty walking, coming sexually inactive, impotent, forgetful, cantankerous, would these kinds of things be symptoms of the physical ailment you knew he possessed with regard to his hardening of the arteries?

A. Yes, and also another ailment that we haven't talked about yet.

Q. What was that?

A. Mr. Fowler stated he had syphilis early in his life and whether or not it was treated or not successfully I have no way of knowing. But syphilis, the later stages, the non-infectious stages, many years later do cause problems in walking, they cause a condition known as tabes dorsalis. And they do cause psychotic, paranoid stage to develop also. So I couldn't say if he had the psychosis from the syphilis or circulatory disturbance or a combination of both.

Q. Do you have an opinion based upon a reasonable medical certainty with respect to his ability to manage his affairs at that time?

A. Yes.

Q. And what would that opinion be?

A. My recommendation was that a guardian be named for him. He was not eligible to manage his own affairs at that time.

Q. *Did he have any conversations with you about his money and his wife?*

A. *Yes.*

Q. *What did he say?*

A. *That he would do everything possible to make sure she got no money.*

* * *" (Our emphasis)

Eleanor contends that even if Sherman was paranoid and suffering from a delusion with respect to Alfrida's fidelity, nevertheless, Sherman could still possess the requisite mental capacity to execute a valid will or *inter-vivos* gift. We agree with Eleanor's legal premise, but do not agree that this rule mandates a reversal of the judgment entered by the trial court.

*Teegarden v. Lewis, supra*, at 102-103, stated the rule to be as follows:

"... Yet, it has been settled that one who is of unsound mind, suffering from delusions or being a monomaniac, may make a valid contract or a will, *if such malady do not enter into or control, to some extent, the execution thereof....*" (Our emphasis) (Citations omitted)

Likewise, it appears to this court, that a person suffering from a delusion or monomania may make a valid *inter-vivos* gift if the delusions of the donor do not control to some extent the execution of the gift.

From the testimony of Dr. Bowman, *supra*, it appears clear to this court that Sherman's desire to make a gift of the disputed $11,965.82 was at least in part motivated by his delusion that his wife, Alfrida, was unfaithful to him. Such being the case, this court is unable to say that the judgment of the trial court is clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A).

Owing to our resolution of this issue, it will be unnecessary for this court to decide whether the judgment of the trial court can be sustained on the additional theories of inadequate delivery and an insufficient property interest to make a valid *inter-vivos* gift.

Judgment affirmed.

Robertson, C.J. and Hoffman, J., by designation, concur.

NOTE—Reported at 371 N.E.2d 1345.