Adrian LUCAS, Appellant-Plaintiff,

v.

Emma FRAZEE, Appellee-Defendant.

No. 4–583A147.

Court of Appeals of Indiana,
Fourth District.

Dec. 11, 1984.

R. Kent Witte, Witte & Monroe, Columbus, for appellant-plaintiff.

Harold V. Jones, Jr., Jones & Patterson, Columbus, for appellee-defendant.

CONOVER, Judge.

Adrian Lucas (Lucas) appeals the trial court's refusal to rescind a deed she executed and delivered to Emma Frazee (Frazee).

We affirm.

ISSUE

We restate the various contentions raised by the parties as the following single issue:

Should the deed have been rescinded because its execution and delivery were procured by constructive fraud?

FACTS

Lucas had experienced health problems for about ten years during which time Frazee, her sister, periodically cared for her. Along with other health problems, Lucas had impaired circulation which could lead to fainting spells. She underwent surgery shortly before her husband died in February, 1982.

After his death, Lucas stayed with Frazee for about three weeks. Frazee generally was in better health than Lucas and had more education. Frazee assisted Lucas with her business affairs after her husband's death. Other family members suggested Lucas leave her property to Frazee as Frazee had never had much money or possessions, Frazee often had cared for Lucas, and the sisters had enjoyed a good relationship for many years.

Accompanied by Frazee, Lucas then met with attorney Joseph Thompson (Thompson). Lucas told Thompson she wanted to convey her home to herself and Frazee as joint tenants because Frazee and her husband had agreed to move to Lucas's home and care for her. Although Thompson told Lucas there could be problems if she changed her mind later, Lucas insisted the transaction be completed because Frazee and her husband would take care of her. Frazee made no response. Lucas executed the deed and also had Thompson prepare a will leaving the rest of her property to Frazee. After the meeting Lucas stated she was very happy with the arrangements because she had settled her financial affairs.

Frazee and her husband subsequently stayed with Lucas at her home for one night, but then left for reasons which are not clear in this record. A dispute followed and Lucas requested Frazee agree to rescind the deed. When Frazee refused, this lawsuit resulted.

Following a bench trial, the court entered judgment, which stated in relevant part:

The Court now finds that judgment should be entered against the plaintiff and in favor of the defendant.

Contrary to the assertion of the plaintiff, the Court does not find that the facts give rise to a fraud cause of action, whether it is an actual fraud or constructive fraud. Rather the Court agrees with the Defendant that the transfer of the real estate by plaintiff and defendant

as joint tenants was in fact a gift. The Court is further convinced that after the transfer was completed, the plaintiff had second thoughts about her actions and desired to renege on her intentions. The Court has no doubt about her intentions or her ability to form an intent to transfer at the time in question.

Lucas appealed.

## DISCUSSION AND DECISION [1]

### I. *Standard of Review*

We often begin our analysis by stating the standard of review we apply to the particular situation presented. In this case, however, the facts and procedural posture involve several interrelated principles which together govern our standard of review.

### A. *Parties' Contentions*

At trial and in this court Lucas argues the deed should be rescinded under the doctrine of constructive fraud because it was procured through undue influence. Frazee has responded by arguing the conveyance was a gift. She contends Lucas is appealing a negative judgment which we should review accordingly.

We hold Lucas is appealing a negative judgment, that is, in the trial court she was the party bearing the burden of proof and judgment was entered adverse to her position. Judge Ratliff stated the standard of review where the case below was tried to the court in equity and it found against the party bearing the burden of proof. In *Burnett v. Heckelman,* (1983) Ind.App., 456 N.E.2d 1094, he said:

> Our review of the trial court's determination in the present case is, nevertheless, one of limited scope. As an appellate tribunal, we may neither reweigh the evidence nor judge the credibility of witnesses.... Moreover, because the present case is one in equity, and was tried before the court and not a jury, its decision will be reversed only if clearly erroneous.... Such a finding will be made by this court when the evidence is uncontradicted and supports no reasonable inferences in favor of the decision ... or, even when there is evidence supportive of the judgment if our review of the record leaves us with a 'definite and firm conviction that a mistake has been made.' (Citations omitted.)

*Id.,* 456 N.E.2d at 1097. *See also* Ind. Rules of Procedure, Trial Rule 52(A)(3).

While this standard of review applies in this case, we believe an expanded discussion of the standard of review in cases turning upon the question of whether or not a confidential relationship was established by the evidence in the court below is in order.

### B. *Presumption of Undue Influence*

Indiana law separates confidential relationship cases where fraud is alleged on the part of the dominant party into two categories, namely (a) those in which a fiduciary relationship arises by operation of law between the litigating parties, and (b) those in which a confidential relationship in fact is shown to exist. The burdens of proof are different in each type of case.

In this State, certain legal and domestic relationships raise a presumption of trust and confidence as to the subordinate party on the one side and a corresponding influence as to the dominant party on the other. These relationships include that of attorney and client, guardian and ward, principal and agent, pastor and

---

1. The appellant's brief's statement of facts is argumentative and essentially presents only the evidence favorable to Lucas. This is not correct. Whatever standard of review this court applies in considering the merits, the "summary of facts required by [Ind.Rules of Procedure, Appellate Rule] 8.3(A)(5) is *not* intended to be a portion of the appellant's argument. It should be a concise narrative summary of the facts in a light most favorable to the judgment." *Moore v. State,* (1981) Ind.App., 426 N.E.2d 86, 90. (Emphasis supplied).

While this court will waive issues or dismiss appeals when parties commit flagrant violations of the rules of appellate procedure, we have decided to address the merits in this case. *See Viccaro v. City of Ft. Wayne,* (1983) Ind.App., 449 N.E.2d 1161, 1162, n. 1.

parishioner, husband and wife, parent and child, and there may be others. *Hunter v. Milhous*, (1973) 159 Ind.App. 105, 124, 305 N.E.2d 448, 460, *quoting Keys v. McDowell*, (1913) 54 Ind.App. 263, 269, 100 N.E. 385, 387. In such cases, if the plaintiff's evidence establishes (a) the existence of such a relationship, and (b) the questioned transaction between those parties resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate, the law *imposes a presumption* the transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and thus void. *See, Blaising v. Mills*, (1978) 176 Ind.App. 141, 146, 374 N.E.2d 1166, 1170, 99 A.L.R.3d 1238, 1243; *Folsom v. Buttolph*, (1924) 82 Ind.App. 283, 246–47, 143 N.E. 258, 262. At that point, the burden of proof shifts to the dominant party. He then must demonstrate the questioned transaction was in fact one had at arms length and thus valid. *See Blaising*, 176 Ind.App. at 146, 374 N.E.2d at 1170, 99 A.L.R.3d at 1243; *Schrenker v. Grimshaw*, (1954) 124 Ind.App. 493, 501, 119 N.E.2d 432, 436; *see generally McCormick v. Malin*, (1841) Ind., 5 Blackf. 509. Moreover, in such cases, the dominant party must rebut the presumption of fraud by clear and unequivocal proof. *Wells v. Wells*, (1925) 197 Ind. 236, 243, 150 N.E. 361, 363; *Burgin v. Dries*, (1960) 130 Ind.App. 249, 261, 163 N.E.2d 609, 615, *overruled on another issue in Kessler v. Williams*, (1964) 136 Ind.App. 110, 198 N.E.2d 22. When judgment is entered against the subordinate party in such cases, we review not only the question of whether the judgment is contrary to law, but also whether the dominant party's evidence is sufficient to sustain the judgment under the clear and unequivocal proof standard. *Cf. Brock v. Walton*, (1983) Ind.App., 456 N.E.2d 1087, 1091 (contributory negligence defense).

However, confidential relationships other than those mentioned above may exist, but the law in such cases does not raise a presumption of undue influence from the mere fact a relationship existed between the parties. *See, e.g. Middlekamp*

*v. Hanewich*, (1970) 147 Ind.App. 561, 263 N.E.2d 189; *Keys v. McDowell, supra.* The subordinate party in such case not only carries the burden of establishing the existence of some relationship between the parties, but also carries the additional burden of proving the parties to the questioned transaction did not deal on terms of equality. The subordinate party must prove either the dominant party dealt with superior knowledge of the matter derived from a fiduciary relationship, or dealt from a position of overpowering influence as to the subordinate party. In the alternative, the subordinate party may prove he dealt from a position of weakness, dependence or trust justifiably reposed in the dominant party. He must also prove, in either case, the result was an unfair advantage to the dominant party. *See id.*, 54 Ind.App. at 269–71, 100 N.E. at 387–88; *McCord v. Bright*, (1909) 44 Ind.App. 275, 288, 87 N.E. 654, 659. When the plaintiff establishes these additional facts the burden of proof shifts. The dominant party must then show affirmatively no deception was practiced, no undue influence was used, and all was fair, open, voluntary, and well understood. *Hunter, supra*, 159 Ind.App. at 123–24, 305 N.E.2d at 459–60; *Schrenker, supra*, 124 Ind.App. 493, 501, 119 N.E.2d 432, 436. *See generally McCord*, 44 Ind.App. at 288, 87 N.E. at 659; *Cowee v. Cornell*, (1878) 75 N.Y. 91, 99–100, 31 Am.Rep. 428, 434. Thus, the question of whether such a confidential relationship existed in those cases is a question of fact for the trier of fact. If the trial court determined the question adversely to the plaintiff, the alleged subordinate party, he then appeals from a negative judgment. When reviewing negative judgments in cases tried to the court, we can reverse only when there is no evidence supporting the trial court's judgment or, even if there is such evidence, we reach a definite and firm conviction a mistake has been made. *Burnett, supra; cf. Kessler, supra*, 136 Ind.App. at 116, 198 N.E.2d at 24; *Keys, supra*, 54 Ind.App. at 268, 100 N.E. at 387.

In this case the trial court found no confidential relationship existed between the parties. It determined the deed from Lucas to Frazee was not procured by undue influence, thus the transaction was not constructively fraudulent. It found Lucas deeded the real estate to Frazee as a gift.

The parties here were sisters, but that relationship did not in and of itself make Frazee a fiduciary as to Lucas, so as to per se raise a presumption of undue influence on Frazee's part. Thus, Lucas bore the burden of proving the existence of a confidential relationship between them which in turn would raise the presumption. Since judgment was entered against her, she appeals a negative judgment which we must review under *Burnett's* "clearly erroneous" standard.

### II. Presumption Not Raised

Frazee argues the trial court correctly determined Lucas did not prove the deed was procured through undue influence. Lucas, however, contends the evidence establishes as a matter of law she never intended to make a gift of an interest in her property to Frazee, she made the conveyance only because Frazee and her husband would move to her home and care for her.

A gift *inter vivos* occurs when
1. the donor is competent to contract;
2. the donor has freedom of will;
3. the donor intends to make a gift;
4. the gift is completed with nothing left undone;
5. the property is delivered by the donor and accepted by the donee;
6. the gift is immediate and absolute.

*Larabee v. Booth,* (1982) Ind.App., 437 N.E.2d 1010, 1011, *on rehearing* 440 N.E.2d 489; *Norman v. Norman,* (1960) 131 Ind.App. 67, 78–79, 169 N.E.2d 414, 419. *See also Hayes v. McKinney,* (1920) 73 Ind.App. 105, 109–110, 126 N.E. 497, 498. The donor's intent is generally a question of fact for the trial court. *Rogers v. Rogers,* (1982) Ind.App., 437 N.E.2d 92, 95–97. *See also Kraus v. Kraus,* (1956)

235 Ind. 325, 329–33, 132 N.E.2d 608, 610–12; *Norman v. Norman,* 131 Ind.App. at 79–81, 169 N.E.2d at 419–20. *See generally In the Matter of the Guardianship of Fowler,* (1978) 175 Ind.App. 386, 388–91, 371 N.E.2d 1345, 1346–48; *Robison v. Fickle,* (1976) 167 Ind.App. 651, 656–62, 666–69, 340 N.E.2d 824, 828–31, 833–35. The evidence here supports the trial court's finding the transaction was a gift.

The facts in this case are analogous to the facts in *Kessler, supra.* There the grantor, who claimed the transaction was not a gift, also had seen an attorney prior to executing the deed. The attorney testified as follows:

A. I questioned her about the *priority* (sic) of making a deed instead of a will to carry out her desire, and Mrs. Kessler had her mind made up that she wanted the deed because she expressed the opinion that wills could be broken, and that she did not want this land to go to her sisters (sic) children, the Watson heirs.

Q. Did you advise her as to whether she should or she should not make a deed?

A. I did.

Q. What did you advise her?

A. *I advised her to transfer it by will,* but she had already stated her objections to that. Mrs. Kessler, in her mind thought that wills could be broken. She definitely had reason to believe that, I don't know.

Q. Did you advise her as to whether wills were any more secure than deeds as to finality?

A. No. *I advised her that deeds were more secure probably than wills, that they were harder to contest the (sic) wills.*

Q. Did you advise her as to whether she should or should not do what she proposed to do?

A. I advised her to carry out her—what she proposed to do by a will.

Q. Did she over rule (sic) you?

A. Yes, Mrs. Kessler knew what she wanted, and that's what I was hired to do, and I prepared the deed. (Emphasis in original and supplied.)

*Id.,* 136 Ind.App. at 115–16, 198 N.E.2d at 24–25.

Here, attorney Thompson also advised Lucas not to transfer the property by deed because there could be problems later if she changed her mind. Nevertheless, she executed the deed. Although there was evidence Frazee was in generally better health than Lucas, had more education, transported Lucas on various errands and assisted her with financial affairs, there was no evidence Frazee attempted to persuade Lucas to transfer the property, as was the case in *Blaising, supra.* Moreover, the evidence most favorable to Frazee reveals Lucas, although generally in poor health, was thinking clearly, understood what she was doing, and explicitly instructed Thompson, even after he expressed reservations, she wished to execute a deed, contrary to the facts in *Hunter, supra,* where the grantor clearly was incompetent when the transactions occurred.

Thus, the evidence does not lead to a conclusion opposite that reached by the trial court and we are not convinced a mistake has been made. Accordingly, we affirm the trial court's conclusions. Lucas's evidence did not raise a presumption of undue influence nor was undue influence otherwise demonstrated.

 Our disposition of the preceding contention also negates Lucas's secondary contention the transaction was the result of a contract subsequently broken by the Frazees. Lucas, as plaintiff, bore the burden of establishing such a contract existed between the parties. The trial court's conclusion the transaction was a gift demonstrates the court believed no such contract existed. Moreover, there is no uncontroverted evidence any "offer" by Lucas was communicated to Frazee prior to execution of the deed. Such an offer is a pre-requisite to formation of a valid contract. *See generally Alfaro v. Stauffer Chemical Co.,* (1977) 173 Ind.App. 89, 96, 362 N.E.2d 500, 505.

Judgment affirmed.

MILLER, P.J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Judge, dissenting.

I dissent. It was undisputed at trial that, when Lucas and Frazee met with Lucas's attorney to prepare the deed at issue, Lucas repeatedly said she was giving the house to Frazee because Frazee and her husband had agreed to move to Lucas's house and care for her. The only reasonable inference from this evidence is that Lucas intended to deed a one-half interest in her house to Frazee in exchange for the care she believed Frazee had agreed to give her. Thus, it seems clear that Lucas did not intend to make a gift to Frazee as the majority concludes. Rather, Lucas clearly believed she was transferring her property in exchange for Frazee's promise to live with her.

In light of this evidence that at the time the deed was prepared and delivered, Lucas did not intend to make an outright gift to Frazee, it is irrelevant that other family members had suggested Lucas leave her property to Frazee because of Frazee's past acts of kindness to Lucas. It is also irrelevant that Lucas's lawyer told her that a transfer to Frazee by deed would be irrevocable. That Lucas persisted despite this advice proves only that she was intent on cementing an agreement binding Frazee to care for her. A gift will be valid only if the donor had the *present intent* to make a gift—if, that is, the donor intended to make a gift at the time of delivery. *Lewis v. Burke,* (1967) 248 Ind. 297, 226 N.E.2d 332. Thus, I cannot agree with the majority's conclusion that the evidence was sufficient to support the trial court's finding of donative intent.

Moreover, I believe Lucas correctly argues that she was entitled to relief on a contractual theory. Again, there is no dispute that Lucas told her attorney, in Frazee's presence, that she wanted to deed a one-half interest in her house to Frazee because Frazee and her husband had agreed to come and care for her. Frazee admitted that she heard this statement.

Thus, when Frazee took the deed, she knew that Lucas expected to be cared for in return. It hardly requires citation to authority to establish that one who accepts property from another knowing that the other expects to be compensated for it impliedly agrees to make compensation. Such an implied agreement was clearly established here. Since Frazee did not move in with Lucas, Lucas is entitled as a matter of law to rescind her deed. I would accordingly reverse the trial court's decision.