**In the Matter of the ESTATE OF Charles W. NEU.**

**Leora Joyce WORTHINGTON, Appellant–Plaintiff,**

v.

**Verna Jean WOZNIAK, Appellee– Defendant.**

No. 20A03–9110–CV–307.

Court of Appeals of Indiana, Third District.

March 23, 1992.

---

Lee F. Mellinger, Elkhart, for appellant-plaintiff.

Victor Arko and William J. Cohen, Elkhart, for appellee-defendant.

STATON, Judge.

Leora Worthington, executrix of the estate of Charles Neu, appeals an adverse

judgment upon the estate's action seeking the imposition of a constructive trust on funds jointly held by Neu and Verna Wozniak. She presents three issues for our review:

I. Whether Wozniak was an incompetent witness pursuant to IND. CODE 34-1-14-6 [the Dead Man's Statute].

II. Whether the trial court's failure to find that Neu was incompetent at the time of the transactions at issue was contrary to law.

III. Whether the trial court's failure to find that a confidential relationship existed between Neu and Wozniak was contrary to law.

We affirm.

Charles Neu died testate on March 12, 1990, leaving as his sole heir his daughter Leora Worthington. Shortly before his death, Neu had transferred funds into two joint accounts held by Neu and his niece, Verna Wozniak. On June 29, 1990, Worthington (as personal representative of the estate of Charles Neu) filed a complaint requesting that the court impose a constructive trust and require Wozniak to tender the jointly held funds to the estate. Worthington alleged that Neu was mentally incompetent and unduly influenced by Wozniak at the time of the transfers.

Following a bench trial, judgment was entered in favor of Wozniak. The trial court found that Worthington had failed to present sufficient evidence to rebut the presumption of IND.CODE 32-4-1.5-4 which provides in pertinent part:

"Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created."

■ Worthington had the burden of proof at trial and appeals a negative judgment. One who appeals a negative judgment cannot question the sufficiency of the evidence but must show that the judgment is contrary to law. *McClure Oil Corp. v. Murray Equipment, Inc.* (1987), Ind.App., 515 N.E.2d 546, 553, *reh. denied.* A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which differs from that reached by the trial court. *Ashland Pipeline Co. v. Indiana Bell Telephone Co., Inc.* (1987), Ind.App., 505 N.E.2d 483, 489, *trans. denied.*

## I.

### Dead Man's Statute

Worthington contends that the trial court erred by allowing Wozniak to testify in contravention of I.C. 34-1-14-6, which provides in pertinent part:

"In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during a lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate[.]"

■ The dead man's statute guards against false testimony by requiring that, when the lips of one party to a transaction are closed by death, the lips of the other party are closed by law. *Johnson v. Rayburn* (1992), Ind.App., 587 N.E.2d 182; *Satterthwaite v. Satterthwaite* (1981), Ind. App., 420 N.E.2d 287, 289, *reh. denied.* The general purpose of the statute is to preserve decedents' estates from spurious claims. *Id.* However, the dead man's statute applies to all cases in which a judgment may be rendered for or against the estate, notwithstanding the parties' positions as plaintiff or defendant. *State Farm Life Ins. v. Fort Wayne Nat. Bank* (1985), Ind. App., 474 N.E.2d 524, 527.

■ A witness is rendered incompetent under the dead man's statute when the following requirements are met:

a. The action must be one in which an administrator or executor is a party, or one of the parties is acting in the capacity of an administrator or executor;

b. It must involve matters which occurred within and during the lifetime of the decedent;

c. It must be a case in which a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator;

d. The witness must be a necessary party to the issue and not merely a party to the record;

e. The witness must be adverse to the estate and must testify against the estate.

*Id.* at 289–90.

■■■ We agree with Worthington that the foregoing requirements were satisfied and Wozniak was therefore an incompetent witness pursuant to I.C. 34–1–14–6. However, an estate representative may elect to permit the testimony of an adverse or incompetent witness, thereby accrediting the witness with competency. *In Re Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1232, *reh. denied.* A personal representative may make a witness competent by calling the witness on the estate's behalf, by failing to object when the adverse party calls himself to testify on his own behalf, or by questioning beyond the scope of direct examination. The accredited witness is rendered entirely competent in the cause, to be used by any party to the suit. *Id.*

In the present case, Wozniak was called to testify during the estate's case-in-chief. The estate's attorney extensively questioned Wozniak concerning the transactions at issue. As Worthington elected to present and accredit Wozniak's testimony, she may not now complain because Wozniak testified to the absence of any undue influence over Neu.

## II.

### *Incompetency*

Worthington claims that the trial court's failure to find that Neu was incompetent

when he transferred funds to Wozniak was contrary to law. She concedes that two witnesses opined that Neu was competent during the relevant time period.[1] However, she argues that Wozniak's testimony should be discounted (inasmuch as Wozniak was "interested" in the suit's outcome) and that the testimony of Billy Campbell was "eliminated" by uncontroverted testimony of Dr. Richard Horsewell.

The evidence on competency was sharply conflicting; we may not reweigh the evidence to resolve conflicts. Moreover, an appellant who appeals a negative judgment may not question the sufficiency of the evidence. *McClure, supra,* at 553. There is evidence in the record to support a finding of competency rather than incompetency. We cannot conclude that the trial court's finding was contrary to law.

## III.

### *Confidential Relationship*

Finally, Worthington argues that the trial court erred as a matter of law in failing to find that a confidential relationship existed between Wozniak and Neu. She claims that the court should have imposed a constructive trust upon Wozniak to prevent her unjust enrichment.

■■■ A confidential relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other. The existence of a confidential relationship depends upon the facts of each case. The mere existence of a family relationship is insufficient to raise a presumption of a confidential relationship. *Hunter v. Hunter* (1972), 152 Ind.App. 365, 372, 283 N.E.2d 775, 779–80, *reh. denied.* However, certain relationships raise a presumption of influence upon the subordinate party by the dominant party. These relationships include that of attorney and client, guardian and ward, principal and agent, pastor and parishioner, husband and wife, and parent and child.

---

**1.** Worthington also testified that no guardianship proceedings had been instituted during Neu's lifetime. Record, p. 94.

*Lucas v. Frazee* (1984), Ind.App., 471 N.E.2d 1163, 1166–67.

Where a plaintiff establishes the existence of such a relationship and that the dominant party received an advantage from a transaction between the two parties, the law imposes a presumption the transaction resulted from undue influence exerted by the dominant party. *Id.* at 1167. The burden of proof then shifts to the dominant party to demonstrate that the transaction was at arms length and thus valid. *Id.* However, where the parties are not in a confidential relationship (e.g., siblings) no presumption operates and the subordinate party must prove that the dominant party dealt from a position of overpowering influence or that the subordinate party dealt from a position of weakness, dependence or trust justifiably reposed in the dominant party. *Reiss v. Reiss* (1987), Ind., 516 N.E.2d 7, 9.

The question of whether a confidential relationship existed is a question for the factfinder. Where the trial court determines the issue adversely to a plaintiff, this court will reverse only when there is no evidence supporting the trial court's judgment or we reach a definite and firm conviction that a mistake has been made. *Id.*

Here, the trial court found that Neu's actions were free from undue influence:

"During the trips to the bank when the bank accounts were changed, the unrebutted evidence is that at no time did the Defendant provide anything other than transportation for the Decedent and made no comment or attempt in any way to influence the Decedent in his actions. While the Court would have been pleased to have heard evidence from the banking official who handled the transaction; none having been presented the Court must take a[t] face value the evidence presented. The evidence having been reviewed, the Court is compelled to find that the Decedent in all ways acted on his own behalf and with his own intentions, free from any undue influence or control by the Defendant. It would appear that the Decedent was unhappy with his living conditions and wished to change the same and turned to the only family member who showed him much care or consideration. The Plaintiff having failed to prove the initial step by clear and convincing evidence, the Court is compelled to enter judgment for the Defendant."

Supp. Record, pp. 3–4.

The record discloses evidence in support of the trial court's finding. Wozniak testified that she transported Neu to his bank on the two occasions when funds were transferred into jointly held accounts but "said nothing at all." Record, p. 37. Wozniak indicated that she was aware of Neu's intent to transfer accounts "into her name" but offered no assistance or objection. Record, p. 38. Her testimony is uncontroverted. We do not conclude, as a matter of law, that the estate established the existence of a confidential relationship between Neu and Wozniak.

Affirmed.

GARRARD and BARTEAU, JJ., concur.