FILED

Mar 09 2017, 5:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Rebecca L. Loeffler
H. Joseph Certain
Marion, Indiana

ATTORNEY FOR APPELLEE

Michael D. Conner
Marion, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Jay Garrison,

*Appellant-Respondent,*

v.

Pamela Garrison,

*Appellee-Plaintiff.*

March 9, 2017

Court of Appeals Case No.
27A05-1603-EU-507

Appeal from the Grant Superior
Court.
The Honorable Jeffrey D. Todd,
Judge.
Cause No. 27D01-1508-EU-140

**Shepard, Senior Judge**

[1] When someone on his deathbed transfers his property under circumstances where competence may be in question, how should the burden of proof concerning the transfer be applied?

## Facts and Procedural History

[2] While on his deathbed, Thomas R. Garrison transferred title on two cars to one of his sons, Jay Garrison. After Thomas' death, his widow Pamela Garrison as

the personal representative of the estate, filed a petition to recover assets. She contested what she deemed *inter vivos* gifts of the cars to Jay and sought to have them returned to the estate, explicitly disputing Thomas' competency. Jay intervened, challenging Pamela's petition. The trial court ordered the return of the vehicles to the estate, finding that they were gifts *causa mortis* for which Thomas was not competent to form donative intent. The trial court certified its order for interlocutory appeal. Agreeing with the trial court's conclusion that the evidence of Thomas' competence was in equipoise, and, thus, the assets should be recovered by the estate, we affirm, albeit on other grounds.

[3] Pamela and Thomas were married for twenty-eight years before Thomas' death, and while no children were born of the marriage, they each had children from prior relationships. Thomas was diagnosed with terminal lung cancer on July 27, 2015, ultimately passing away on August 9, 2015. On August 11, 2015, two days prior to Thomas' funeral, Jay, who was accompanied by police officers, came to Pamela and Thomas' house to take possession of a 2013 Chevrolet Corvette Z06 and a 2006 Ford Explorer XLT. Those vehicles had been titled in Thomas' name, but as of July 30, 2015, were titled in Jay's name.

[4] An unsupervised estate was opened on August 18, 2015. Pamela filed a petition to recover assets, seeking to nullify the *inter vivos* gifts of the vehicles to Jay.

[5] Those who testified at the contested hearing agreed that Thomas frequently smoked cigarettes, especially prior to his death, and that he consumed whiskey

and beer in increasingly large quantities before his death. Most witnesses acknowledged that after his diagnosis, Thomas was sad and in considerable physical pain.

[6] According to some, including Jay, Thomas' sister Janet Baller, and Janet's husband David Lee Baller, Thomas' behavior in the period leading up to his death remained fairly consistent with behavior they had observed over the years. Thomas was an alcoholic, who smoked a great deal, and had an unusual sense of humor.

[7] In contrast, Pamela testified that beginning in June 2015, Thomas exhibited drastically changed behavior, such as going outdoors wearing only a winter coat and racing helmet, and crawling on the living room floor searching for a missing air pump he thought would be located under the couch. Pamela's daughter Carla Thompson, who had grown up in Thomas' household, testified that at the beginning of summer Thomas' physical and mental health had deteriorated noticeably. She observed him fall often, lose his balance, become weaker and thinner, and become completely incontinent. She often had to insist on supplying him with clean bedding where he lay. She heard him say things that did not make sense, engage in verbal arguments with Pamela without realizing it, and call out the name of his childhood dog instead of the name of his current dog.

[8] Thomas' good friend Dan Hanthorn had a conversation with Thomas after the diagnosis about why he was going to heat an ice pick and lie down on it to

relieve his pain, ultimately removing the ice pick from the hands of Thomas'
grandson, who had been enlisted by Thomas to help in this enterprise.

[9] The trial judge concluded that the evidence of Thomas' competency to make a
gift *causa mortis* was evenly split, and that the vehicles must therefore be
returned to the estate. Jay now appeals.

## Discussion and Decision

[10] Jay argues that 1) the trial court erroneously concluded it was a gift *causa mortis*
as opposed to a gift *inter vivos*, 2) applied the wrong standard of review, and 3)
based its decision on insufficient evidence.

[11] Pamela raised a straight claim of incompetence in her petition to recover assets.
A review of a variety of standards of review, burdens of proof, and burdens of
going forward, will aid in resolving this appeal.

[12] There are two different kinds of gifts—*inter vivos* gifts and gifts *causa mortis*. An
*inter vivos* gift is one where the donee becomes the absolute owner of a thing
given in the lifetime of the donor. *Dunnewind v. Cook*, 697 N.E.2d 485, 489 n.3
(Ind. Ct. App. 1998), *trans. denied*. An *inter vivos* gift is made when: (1) the
donor is competent to contract; (2) the donor has freedom of will; (3) the donor
intends to make a gift; (4) the gift is completed with nothing left undone; (5) the
property is delivered by the donor and accepted by the donee; and (6) the gift is
immediate and absolute. *Id.*

A gift *causa mortis*, on the other hand, is accomplished when: (1) the gift was the donor's property; (2) the gift was given when the donor was in peril of death or while under the apprehension of impending death from an existing malady; (3) the donor dies as a result of the disorder without intervening recovery; and, (4) there was actual or constructive delivery of the thing given to the donee with the intention that the title vest conditionally upon the death of the donor. *Dunnewind*, 697 N.E.2d at 489 n.2.

Delivery of the gift—*inter vivos* or *causa mortis*—is an indispensable requirement without which the gift fails. *Heaphy v. Ogle*, 896 N.E.2d 551, 557 (Ind. Ct. App. 2008); *Hopping v. Wood*, 526 N.E.2d 1205, 1207 (Ind. Ct. App. 1988), *trans. denied*. Still, manual transfer is not always necessary. *Id.* It is sufficient if the delivery is as complete as the thing and the circumstances of the parties will permit, because delivery may be actual, constructive or symbolic. *Heaphy*, 896 N.E.2d at 557 (citing *Lewis v. Burke*, 248 Ind. 297, 226 N.E.2d 332, 336 (1967)).

The mental capacity required to make a valid *inter vivos* gift is the same as the capacity required to execute a will. *Guardianship of Fowler v. Fowler*, 175 Ind. App. 386, 387, 371 N.E.2d 1345, 1346 (1978) (quoting *Lewis v. Teegarden*, 145 Ind. 98, 101, 40 N.E. 1047, 1048 (1895)); *but cf.*, Henry's Indiana Probate Law and Practice 5 § 32.20 at 32-111 (competency requirement for donor of *inter vivos* gift is "business judgment" test of contracts rather than the weaker mind test of a testator). The same is true of the donor of a gift *causa mortis*, who "must possess sufficient mental capacity to make the gift, that is, must be mentally competent or of sound mind." 38A C.J.S. Gifts § 101 (2016). Indeed,

"generally, the same degree of mental capacity is required to make a gift causa mortis as is required to make a will." *Id.*; Restatement (Third) of Property (Wills & Don. Transfers) § 8.1 TD No 3 (2001). The determination of mental capacity is tested at the moment the gift is made. 38A C.J.S. Gifts § 101 (2016).

[16] The parties to this case contest the burden of establishing the type of gift versus the presumptions of competency for each kind of gift, the burden imposed on the challenger, and the burden of going forward with corresponding rebuttal evidence. Resolution of the appeal turns on whether the parties have met their respective burdens on the issue of competency.

[17] For an *inter vivos* gift, when determining whether a transfer qualified as such, the burden of proof is a preponderance of the evidence. *In re Estate of Deahl*, 524 N.E.2d 810, 812 (Ind. Ct. App. 1988), *trans. denied*. For a gift *causa mortis*, because of the opportunity for the perpetration of fraud on the decedent, the evidence establishing such a gift must be clear and convincing, and must be accompanied by a delivery of the subject matter. *In re Collinson*, 231 Ind. 605, 108 N.E.2d 700, 701, (1952) (citing 24 Am. Jur., Gifts, § 129, p. 797). The burden cannot be met by the sole uncorroborated testimony of the donee. *Collinson*, 108 N.E.2d at 702.

[18] In *Branstrator v. Crow*, 162 Ind. 362, 69 N.E. 668 (1904), the children of a deceased contested the competency of the testator. Our Supreme Court acknowledged that once these plaintiffs established incapacity of the testator by a preponderance of the evidence, the presumption of incapacity arose. *Id.* at

669. The prima facie case would be made, and if the defendants came forward with no evidence to establish competency, the plaintiffs would prevail. *Id.* Yet, if the defendants successfully prevented the plaintiffs from establishing incompetency by a preponderance of the evidence, the plaintiffs' claim would be defeated. *Id.* If the evidence of competency was in equipoise, then the plaintiffs' claim would be defeated. *Id.*

[19] Following these lines alone, Pamela's claim would fail and the vehicles would remain in Jay's hands. Still, as a trial court may be affirmed on any grounds apparent in the record, we conclude that the outcome ordered by the court was correct. *See Campbell v. El Dee Apartments*, 701 N.E.2d 616, 620 n.3 (Ind. 1998) ("We acknowledge the trial court's ruling may be affirmed on any ground supported by the evidence of record.").

[20] Certain transfers are viewed differently based on the relationship of the donor and donee. In *Lucas v. Frazee*, 471 N.E.2d 1163, 1166 (Ind. Ct. App. 1984), we examined whether a deed should be rescinded because it was procured through constructive fraud or upheld as a gift. We acknowledged that establishment of the existence of certain relationships, such as parent and child, lead to a presumption that the questioned transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and, therefore, void. *Id.* at 1166-67. In that situation, the burden of proof shifts to the dominant party to demonstrate that the transaction was conducted at arm's length, and thus was valid. *Id.* at 1167. The dominant party must rebut the presumption of fraud by clear and unequivocal proof. *Id.* Evidence of the donor/subordinate

party's competence is relevant to consideration of the validity of such gift. *See In re Estate of Deahl*, 524 N.E.2d 810, 812 (Ind. Ct. App. 1988) (assets properly excluded from estate as gifts made prior to donor's death).[1]

Inasmuch as Thomas and Jay were father and son, the presumption of undue influence arose with respect to the transfer. Jay presented testimony that Thomas was competent at the time of the transfer, and that Jay possessed certificates of title to the two vehicles dated July 30, 2015. Pamela, however, presented testimonial evidence of Thomas' incompetency before and at the time of transfer. The trial court found the evidence of competency was evenly split. Jay, therefore, has not rebutted the presumption of undue influence, and the estate is entitled to recovery of the vehicles.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

Riley, J., and Kirsch, J., concur.

---

[1] Additionally, if the gift was a gift *causa mortis*, the possibility of fraud raises the burden of proof for establishing the gift.